# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | NO. 19-1002 |
| | ) | |
| v. | ) | |
| | ) | |
| DENNIS SUELLENTROP, JR, | ) | |
| | ) | |
| | ) | |
| Appellant. | ) | |

APPEAL FROM UNITED STATES OF AMERICA V.

DENNIS SUELLENTROP, JR.,


UNITED STATES DISTRICT COURT OF THE EASTERN DISTRICT OF
MISSOURI, EASTERN DIVISION, ST. LOUIS

NO. 4:17-CR-00435-CDP

APPELLANT'S BRIEF


 /S/  Joseph M. Hogan

Joseph M. Hogan, MO47008

Attorney for Appellant

7751 Carondelet

Clayton, Missouri 63105

(314) 863-9898

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

On January 1, 2017, officers were dispatched to a home where, on arrival, the officer was met by an individual who showed the officer a picture on Suellentrop's locked, password protected cell phone.

The officer closed the phone, placed it in his pocket and turned it over to Sergeant Poe. After taking Suellentrop into custody, Sergeant Poe asked for consent to search his home for other evidence. Suellentrop declined. A search warrant application and affidavit was drafted by Sergeant Poe for the residence, and the search warrant makes no mention of a cell phone.

Sgt Poe conducted several extractions of the contents of the cell phone, drafted a supplemental report, and forwarded the report to the Jefferson County Prosecutor's Office who then contacted the United States attorney's office, who in turn assigned Special Agent Burbridge. After reviewing the reports, search warrant, and speaking with Sgt Poe, Special Agent Burbridge applied for federal search warrant for the cell phone that made no mention of any of the prior extractions and instead stated no further searches had been done.

Suellentrop contends due to the illegal search, for which no exception applies, his Motion to Suppress must be granted and requests 15 minutes oral argument.

2

# TABLE OF CONTENTS

Summary of the Case and Request for Oral Argument . . . . . . . . . . . . . . . . . . . . . . .2

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Statement of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

I.      An officer who unlocks a phone to show a police officer images on a
        phone is not acting under the private search exception, but if the
        exception is found to apply, the officer cannot under the private search
        exception further examine the seized phone without a search warrant. . . .
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

        a.  The district court erred finding that the private search exception
            applies where an individual unlocks a password protection phone
            without permission in order to show a law enforcement officer images
            contained on the phone . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . 26

        b.  The district court found in adopting the Recommendation and Report
            from the Magistrate finding that the private search doctrine does not
            extend to all of the thumbnail images in the photo album on
            Suellentrop's cell phone. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

Appellate Case: 19-1002     Page: 3     Date Filed: 04/01/2019 Entry ID: 4772778

II.   Evidence obtained from a cellular telephone after several searches
      conducted while the phone was in the custody of the sheriff's department
      without a search warrant must be suppressed as the searches were in
      violation of defendant's Fourth Amendment right guaranteed by the
      United States Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

      a.  It is uncontroverted that the cellular telephone was in police custody
          at the time the subsequent forensic searches were conducted . . . . .  32

      b.  It is uncontroverted that the search warrant fails to mention any
          cellular telephone. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

      c.  The district court erred in adopting the Recommendation and Report
          from the Magistrate finding that a good-faith exception applies to the
          facts present in this case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33

      d.  The district court erred in adopting the Recommendation and Report
          from the Magistrate and its reliance on the line of cases cited for the
          good faith exception to apply when the cell phone was not attached or
          present on the property to be searched, as the Government's evidence
          in its entirety was obtained from the cellular telephone omitted from
          the search warrant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Appellate Case: 19-1002   Page: 4   Date Filed: 04/01/2019 Entry ID: 4772778

III. The district court erred in adopting the Magistrates finding that the federal search warrant is admissible under the independent source doctrine as there is no independent source. . . . . . . . . . . . . . . . . . . . . . . .41

    a. The defendant was entitled to a Franks hearing as same would have allowed testimony that illustrates that there would not have been a federal investigation, save for the warrantless searches of the cellular telephone . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . 42

    b. In the present case, the federal government was not contacted until after the warrantless search had occurred. The federal agent testified that he made a decision to conduct an investigation after receiving not the initial report, but in addition the supplemental report, which contained the fruits of the warrantless search. . . . . . . . . . . . . . . . . . .44

IV. The district court erred in adopting the Magistrate's conclusion that based on the facts and circumstances of the case, the evidence need not be suppressed as fruit of the poisonous tree. . . . . . . . . . . . . . . . . . . . . . . .46

    a. The report and recommendation is silent as to whether the federal government would have conducted any investigation, or sought a warrant, had it not been aware of the tainted evidence obtained by the warrantless searches, contrary to precedent. . . . . . . . . . . . . . . . . . . . . . . 46

b. There is no exception to the general warrant requirement to obtain a

search warrant present in this case. . . . . . . . . . . . . . . . . . . . . . . . . . . . .48

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Conclusion and Relief Sought . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .51

Addendum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

Appellate Case: 19-1002    Page: 6    Date Filed: 04/01/2019 Entry ID: 4772778

# TABLE OF AUTHORITIES

<u>Davis v. United States</u>, 564 U.S. 229 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .49

<u>Franks v. Delaware</u>, 438 U.S. 154 (1978). . . . . . . . . . . . . . . . . . . . . . . . .16, 43, 44

<u>Herring v. United States</u>, 555 U.S. 135 (2009). . . . . . . . . . . . . . . . 15, 34, 35, 36, 37

<u>Katz v. United States</u>, 389 U.S. 347 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

<u>Maryland v. Garrison</u>, 480 U.S. 79 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

<u>Murray v. U.S.</u>, 487 U.S. 533 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 45

<u>Riley v. California</u>, 134 S.Ct. 2473 (2014). . . . . . . . . . . . . . . . 17, 31, 33, 47, 48, 49

<u>United States v. Bah</u>, 794 F.3d 617 (6th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . .43

<u>United States v. Clapp</u>, 46 F.3d 795 (8th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . 44

<u>United States v. Davis</u>, 564 U.S. 229 (2011). . . . . . . . . . . . . . . . . . . . . . . . . 15, 40

<u>United States v. Gater</u>, 868 F.3d657 (8th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 44

<u>United States v. Highbull</u>, --F.3d--, 2018 WL 3322261 (8th Cir. 7/6, 18) . .13, 27 28

<u>United States v. Houck</u>, 888 F.3d 957 (8th Cir. 2018). . . . . . . . . . . . . . .15, 33, 37, 38

<u>United States v. Jackson</u>, 784 F.3d 1227 (8th Cir. 2015). . . . . . . . . . . . . . . . . . . 36

<u>United States v. Leon</u>, 468 U.S. 897 (1984). . . . . . . . . . . . . . . . . . 17, 34, 36, 37, 48

<u>United States v. Leverington</u>, 397 F.3d 1112 (8th Cir. 2005). . . . . . . . . . . 16, 17, 45

<u>United States v. Mashek</u>, 606 F.3d 922 (8th Cir. 2010). . . . . . . . . . . . . . . . . . . . .16

<u>United States v. Miller</u>, 152 F.3d 813 (8th Cir. 1998). . . . . . . . . . . . . . . . . . . 13, 27

<u>United States v. McCarty</u>, 612 F.3d 1020 (8th Cir. 2010) . . . . . . . . . . .13, 14, 16, 17

<u>United States v. Puckett</u>, 466 F.3d 626 (8th Cir. 2006) . . . . . . . . . . . . . . . . . 15, 35

<u>United States v. Rodriquez</u>, 834 F.3d 937 (8th Cir. 2016) . . . . . . . . . . . . . . . . . 45

<u>United States v. Sparks</u>, 806 F.3d 1323 (11th Cir. 2015). . . . . . . . . . . . . . . . 14, 29

Appellate Case: 19-1002    Page: 7    Date Filed: 04/01/2019 Entry ID: 4772778

<u>United States v. Starr</u>, 533 F.3d 985 (8th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . .27

18 U.S.C. §2251(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 12

18 U.S.C. §2252A(a) (5)(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

28 U.S.C. §1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States Constitution Amendment Four . . . . . . . . . . . . . . 4, 25, 29, 30, 37, 40

Appellate Case: 19-1002    Page: 8    Date Filed: 04/01/2019 Entry ID: 4772778

## JURISDICTIONAL STATEMENT

Dennis Suellentrop, Jr. was charged by indictment in the United States District Court, Eastern District of Missouri, Eastern Division in Cause No. 4:17 CR 435 CDP with nine (9) charges to wit: Count I- (defendant did) knowingly employ,use, persuade, induce, entice and coerce an infant, a prepubescent minor female, to engage in sexually explicit conduct, specifically, defendant video recorded the infant in a lascivious display of her genitals, including video recording her as he forcibly squeezed her vagina, forced his tongue into her anus, licked her anus, forced his tongue into her vagina, and put his tongue in her mouth, and said sexually explicit conduct was for the purpose of producing visual depictions of said conduct, and such depictions were produced using materials that had been mailed, shipped, or transported in interstate and foreign commerce, i.e. an LG Electronics Cell phone and a MicroSD card, in violation of Title 18, United States Code 2251(a) and ; Count II- (defendant did) knowingly employ, use, persuade, induce, entice and coerce an infant, a prepubescent minor female, to engage in sexually explicit conduct, specifically, defendant video recorded the infant in a lascivious display of her genitals, including video recording her as he forcibly squeezed her vagina, forced his tongue into her anus, licked her anus, forced his tongue into her vagina, and put his tongue in her mouth, and said

9

sexually explicit conduct was for the purpose of producing visual depictions of said conduct, and such depictions were produced using materials that had been mailed, shipped, or transported in interstate and foreign commerce, i.e. an LG Electronics Cell phone and a MicroSD card, in violation of Title 18, United States Code 2251(a); Count III - (defendant did) knowingly employ, use, persuade, induce, entice and coerce an infant, a prepubescent minor female, to engage in sexually explicit conduct, specifically, defendant video recorded the infant in a lascivious display of her genitals, including video recording her as he licked her vagina, anus and face; forcibly pulls her back as she tries to move away from him; and forcibly holds her thighs as he rubbed his penis on her vagina and anus until he ejaculated on her, and said sexually explicit conduct was for the purpose of producing visual depictions of said conduct, and such depictions were produced using materials that had been mailed, shipped, or transported in interstate and foreign commerce, i.e. an LG Electronics Cell phone and a MicroSD card, in violation of Title 18, United States Code 2251(a); Count IV - (defendant did) knowingly employ, use, persuade, induce, entice and coerce an infant, a prepubescent minor female, to engage in sexually explicit conduct, specifically, defendant video recorded the infant in a lascivious display of her genitals, including video recording her as he forced his tongue into her anus, and inserted his finger into her anus, and said sexually explicit conduct was for the purpose of

Appellate Case: 19-1002    Page: 10    Date Filed: 04/01/2019 Entry ID: 4772778

producing visual depictions of said conduct, and such depictions were produced using materials that had been mailed, shipped, or transported in interstate and foreign commerce, i.e. an LG Electronics Cell phone and a MicroSD card, in violation of Title 18, United States Code 2251(a); Count V- (defendant did) knowingly employ, use, persuade, induce, entice and coerce an infant, a prepubescent minor female, to engage in sexually explicit conduct, specifically, defendant video recorded the infant in a lascivious display of her genitals, including video recording her as he forcibly spread her buttocks apart and inserted his tongue into her vagina and anus, and said sexually explicit conduct was for the purpose of producing visual depictions of said conduct, and such depictions were produced using materials that had been mailed, shipped, or transported in interstate and foreign commerce, i.e. an LG Electronics Cell phone and a MicroSD card, in violation of Title 18, United States Code 2251(a); Count VI- (defendant did) knowingly employ, use, persuade, induce, entice and coerce an infant, a prepubescent minor female, to engage in sexually explicit conduct, specifically, defendant video recorded the infant in a lascivious display of her genitals, including video recording her as he rubbed his penis on her feet, and said sexually explicit conduct was for the purpose of producing visual depictions of said conduct, and such depictions were produced using materials that had been mailed, shipped, or transported in interstate and foreign commerce, i.e. an LG Electronics

11

Cell phone and a MicroSD card, in violation of Title 18, United States Code 2251(a); Count VII- (defendant did) knowingly employ, use, persuade, induce, entice and coerce an infant, a prepubescent minor female, to engage in sexually explicit conduct, specifically, defendant video recorded the infant in a lascivious display of her genitals, including video recording her as he forcibly spread her buttocks apart, rubbed his penis on her buttocks and vagina, and inserted his penis into her mouth, and said sexually explicit conduct was for the purpose of producing visual depictions of said conduct, and such depictions were produced using materials that had been mailed, shipped, or transported in interstate and foreign commerce, i.e. an LG Electronics Cell phone and a MicroSD card, in violation of Title 18, United States Code 2251(a); Count VIII- the defendant did knowingly possess material that contained an image of a child pornography that was produced using materials that traveled in interstate and foreign commerce, to wit, an LG Electronics Cell phone and a MicroSD card having been produced outside Missouri and therefore having traveled in interstate and foreign commerce, and said LG Electronics Cell phone and MicroSD card contained child pornography, in violation of Title 18, United States Cod, Section 2252A(a)(5)(B). He entered a plea of guilty on all counts on September 6, 2018, reserving his right to appeal, and sentence was imposed on December 20, 2018. Suellentrop was sentenced to 120 years. Suellentrop filed a timely notice of appeal on December

Appellate Case: 19-1002    Page: 12    Date Filed: 04/01/2019 Entry ID: 4772778

27, 2018. This court's jurisdiction is based on 28 U.S.C. § 1291, which provides for jurisdiction over a final judgment from a U.S. District Court.

## STATEMENT OF ISSUES

I.     A private citizen who unlocks a phone to show a police officer images on a phone is not acting under the private search exception, but if the exception is found to apply, the officer cannot under the private search exception further examine the seized phone without a search warrant.

Standard of Review: An appellate court reviews de novo a district court's conclusions of law regarding a denial of a Motion to Suppress evidence, and reviews for clear error the district court's findings of fact.  United States v. McCarty, 612 F.3d 1020 (8th Cir. 2010).

   a.   The district court erred in finding that the private search exception applies where an individual unlocks a password protection phone without permission in order to show a law enforcement officer images contained on the phone.

        United States v. Miller, 152 F.3d 813, 815 (8th Cir. 1998)

        United States v. Highbull, --F.3d--, 2018, (8th Cir. July 6, 2018)

   b.   The district court found in adopting the Recommendation and Report from the Magistrate finding that the private search doctrine does not

13

extend to all of the thumbnail images in the photo album on Suellentrop's cell phone.

United States v. Sparks, 806 F.3d 1323 (11th Cir. 2015)

II.  Evidence obtained from a cellular telephone after several searches conducted while the phone was in the custody of the sheriff's department without a search warrant must be suppressed as the searches were in violation of defendant's Fourth Amendment right guaranteed by the United States Constitution.

Standard of Review: An appellate court reviews de novo a district court's conclusions of law regarding a denial of a Motion to Suppress evidence, and reviews for clear error the district court's findings of fact. United States v. McCarty, 612 F.3d 1020 (8th Cir. 2010).

a.  It is uncontroverted that the cellular telephone was in police custody at the time the subsequent forensic searches were conducted.

R&R

DCDM 38, 91-121

b.  It is uncontroverted that the search warrant fails to mention any cellular telephone.

R &R

Addendum, Government's Exhibit 9A, p 10

14

c.  The district court erred in adopting the Recommendation and Report from the Magistrate finding that a good-faith exception applies to the facts present in this case.

Herring v. United States, 555 U.S. 135 (2009)

United States v. Puckett, 466 F.3d 626 (8th Cir. 2006)

d.  The district court erred in adopting the Recommendation and Report from the Magistrate and its reliance on the line of cases cited for the good faith exception to apply when the cell phone was not attached or present on the property to be searched, and the Government's evidence in its entirety was obtained from the cellular telephone omitted from the search warrant.

United States v. Houck, 888 F.3d 957 (8th Cir. 2018)

Herring v. United States, 555 U.S. 135 (2009)

United States v. Davis, 564 U.S. 229 (2011)

III.  The district court erred in adopting the Magistrates finding that the federal search warrant is admissible under the independent source doctrine as there is no independent source.

Standard of Review: An appellate court reviews de novo a district court's conclusions of law regarding a denial of a Motion to Suppress evidence,

15

and reviews for clear error the district court's findings of fact. <u>United States v. McCarty</u>, 612 F.3d 1020 (8th Cir. 2010)

a. The defendant was entitled to a Franks hearing as same would have allowed testimony that illustrates that there would not have been a federal investigation, save for the warrantless searches of the cellular telephone.

<u>United States v. Franks</u>, 438 U.S. 154 (1978)

<u>United States v. Mashek</u>, 606 F.3d 922 (8th Cir. 2010)

b. In the present case, the federal government was not contacted until after the warrantless search had occurred. The federal agent testified that he made a decision to conduct an investigation after receiving not the initial report, but in addition the supplemental report, which contained the fruits of the warrantless search.

<u>Murray v. United States</u>, 487 U.S. 533 (1988)

<u>United States v. Leverington</u>, 397 F.3d 1112 (8th Cir. 2005)

IV. The district court erred in adopting the Magistrate's conclusion that based on the facts and circumstances of the case, the evidence need not be suppressed as fruit of the poisonous tree.

16

Standard of Review: An appellate court reviews de novo a district court's conclusions of law regarding a denial of a Motion to Suppress evidence, and reviews for clear error the district court's findings of fact. United States v. McCarty, 612 F.3d 1020 (8th Cir. 2010).

a. The Report and Recommendation is silent as to whether the federal government would have conducted any investigation, or sought a warrant, had it not been aware of the tainted evidence obtained by the warrantless searches, contrary to precedent.

Murray v. U.S., 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988)

United States v. Leverington, 397 F.3d 1112 (8th Cir. 2005)

b. There is no exception to the general warrant requirement to obtain a search warrant present in this case.

Riley v. California, 134 S.Ct. 2473; 189 L.Ed.2d 430 (2014)

United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)

## STATEMENT OF THE CASE

The issues presented in this case are first, whether evidence obtained from multiple searches of a cell phone without a warrant must be suppressed and second, whether the fruits of a subsequent federal search warrant, obtained after the federal special agent is made aware of the tainted evidence already obtained from the previous warrantless searches, and then seeks the warrant, must be suppressed as fruit of the poisonous tree. Dennis Suellentrop, Jr. argues the case law relevant to these issues requires answers in the affirmative.

On September 27, 2017, a federal indictment was returned against Dennis Suellentrop. The undersigned entered his appearance after appointment on October 24, 2017, and on October 31, 2017, was granted additional time to file pre-trial Motions. Defense counsel filed a Motion to Suppress which was argued on February 28, 2018, after which, each party was permitted to file post- hearing memorandums based on the evidence presented at the hearing after transcripts were prepared. A post hearing memorandum was filed on behalf of defendant on June 7, 2018, with the Government's response filed June 25, 2018. On July 23, 2018, the Report and Recommendations of the Magistrate Judge was entered recommending Suellentrop's Motion be denied. On July 27, 2018, defendant filed his Objections to the Report and Recommendation. On August 2, 2018, the Government filed its Response to Defendant's Objections. On August 13, 2018,

18

the Report and Recommendations of the Magistrate Judge were sustained adopted and incorporated by the district court, the Honorable Catherine D. Perry. A Frye hearing was held on August 28, 2018 at which time change of plea possibility was scheduled for September 6, 2018.

On September 6, 2018, defendant entered a plea of guilty to all counts. A presentence investigation report was ordered and final report filed December 13, 2018. Sentence was imposed on December 20, 2018. Suellentrop was committed to the Federal Bureau of Prisons for a term of 120 years (consisting of 30 years on Counts I, II, III, and IV, said terms to run consecutive to each other, and 30 years on Counts V, VI, and VII, and 20 years on Count VIII, with the counts V through VIII to run concurrently with each other and with Counts I- IV, for a total of 120 years. On December 27, 2018, a timely notice of appeal was filed.

On January 1, 2017, law enforcement officers were dispatched to 2566 East Rock Creek Road, Arnold, Missouri for a "check the well being." Upon arrival, the officer met Paul Donnelly, who informed him he did not have a working cell phone. Paul Donnelly told the officer that he went into the room of defendant, where he found a locked phone. (DCDM 38 9, ln 14). Donnelly stated he memorized the code from having been previously granted permission to use the phone when Suellentrop was present. (DCDM 38 9, ln 16) In the past, when Donnelly was given permission to use the phone by Suellentrop, he was "hawking

19

over [him]". (DCDM 38 10, ln 10-12). Donnelly was not granted permission to use Suellentrop's phone on the date in question. Suellentrop was in his bed room, where he was sleeping. Donnelly knocked on the door, received no answer, and went in anyway. (DCDM 38, 35, ln 20-25, 36 ln 1-12).

Donnelly unlocked Suellentrop's phone while he was sleeping, made a phone call, and then decided to look through defendant's home because he was "being nosy." (DCDM 38 11, ln 15-16; 37, ln 13-17, ln 23-25). When the officer arrives at Suellentrop's home, Donnelly hands Suellentrop's phone to the officer and said "this is what I found." (DCDM 38 45, ln 8-9). Officer Roberts observes one picture and turned the phone off and put it in his pocket. Donnelly told the officers about two other images he observed. (DCDM 38 55-56, ln 23-2). Suellentrop was still asleep in his bedroom when police arrived. (DCDM 38 57, ln 15). The phone, a black LG Cellular phone with a cracked and broken screen belonging to Suellentrop was remanded to Sergeant Poe. Another officer, Lunsford, asked Suellentrop if she could search his phone, and he said no. (DCDM 38 90, lns 7-13).

Sergeant Poe requested Suellentrop consent to search his home and he declined. (DCDM 38 88, ln 15-18). Sergeant Poe testified at the motion hearing that he also asked Suellentrop to consent to a search of his phone and he declined; however, Sergeant Poe did not state that he asked Suellentrop to search his phone

in his sworn statement attached to his application for search warrant. (DCDM 38 88, ln 19-23), or in his original police report. Notably, Sergeant Poe also did not include that Officer Lunsford had asked Suellentrop if she could search the phone, and he said no.

Sergeant Poe drafted the affidavit for the search warrant. Sergeant Poe set forth the facts he had learned from the investigation that day, including what Donnelly had observed on Suellentrop's phone, and that the phone had been seized and was in the custody of the sheriff's department.

Sergeant Poe included, "I requested consent to search the residence for any **other** electronic devices or evidence related to the crime." (DCDM 38, 98, 9-12). Sergeant Poe testified it was his intention to obtain a search warrant to search the phone. Sergeant Poe did not include anywhere in his affidavit a request for the cell phone to be included in the search warrant, despite knowing it was not in the home. A search warrant was applied for and granted to search the residence of the defendant, after the phone had been removed from the home. The judge signed off on the search warrant based on the probable cause statement contained in the search warrant. (DCDM 38 101, ln 18-25).

There is no mention of a cell phone anywhere in the search warrant.

Appellate Case: 19-1002     Page: 21     Date Filed: 04/01/2019 Entry ID: 4772778

Sergeant Poe took the cell phone to the Narcotics office where the information was extracted from the cellular telephone with the assistance of narcotics personnel and their equipment and information was seized as evidence. Sergeant Poe realized he did not know password, so after the password was retrieved, a second extraction occurred and the information seized as evidence.

After Sergeant Poe reviewed some of the warrantless evidence he had extracted, he realized he needed a larger storage digital device and again using narcotics personnel and their equipment, the cellular phone content was extracted to a jump drive. Poe then set forth in a written report what he observed from each of the searches, complete with detail of what the images or videos depict, what date they were taken, how long they last, and forwards the report to the Jefferson Prosecutor's Office, after which additional charges are added in state court. (DCDM 38 117, 18-25). In addition to filing the additional charges, and after receiving Sergeant Poe's supplemental report containing the evidence obtained from the subsequent warrantless searches of the phone, the Jefferson County Prosecutor's office contacted the United States Attorney's Office, who then contacted Agent Burbridge to open an investigation. (DCDM 38 124, 125.)

Defendant was charged in State Court, Jefferson County, on January 3, 2017 by complaint with three counts of child molestation in the first degree, each count for an image seen on defendant's cellular telephone as is set forth in the probable

cause statement; on March 10, 2017 by amended information with an additional count of creating child pornography, again using evidence from defendant's cellular telephone, and on June 8, 2017 with nineteen counts in Cause Number 17JE-CR00001-02, each additional count added relating to images and videos taken from Suellentrop's cellular telephone without a warrant.

The searches of the phone began during late February, or early March, though Sergeant Poe could not remember when (DCDM 38 104, ln 15-18). Sergeant Poe testified that he spoke with Special Agent Burbridge shortly after he wrote the supplemental report, which contained the contents of the extractions of the phone. (See DCDM 38 118, ln 13-25).

There was no federal investigation, nor federal special agent assigned, until the Jefferson County prosecutor contacted a United States Attorney, after the warrantless extractions had been completed and contents of those extractions reviewed, who then alerted Special Agent Burbridge, who then contacted Sergeant Poe. (DCDM 38 122, ln 10-25).

It is undisputed that contained in paragraph 24 of the sworn affidavit for the Federal search warrant are the words "Deputy Roberts seized the cellular telephone and no additional examination was done. The Motion court pointed out that it could only consider the four corners of the affidavit and the omission was not

23

enough for a Franks hearing, as it was being conflated with a fruit of the poisonous tree issue. (DCDM 38 133, 23-25).

The special agent had concerns about the legality of the state searches pursuant to the State search warrant. DCDM 38 125, ln 4-5; 125 ln 15-23.  A federal search warrant was issued on June 20, 2017 for the cell phone and the searches conducted to that search warrant resulted in the exact same evidence that had already been seized, reviewed, documented and additional criminal charges issued against Suellentrop, all without a warrant.

## SUMMARY OF THE ARGUMENT

The private search exception does not apply to the facts, as here, where a private citizen unlocks a password protected phone for the sole purpose of showing pictures on the phone to a law enforcement officer.  Where the private citizen earlier opened the phone, when he was alone, and contacted law enforcement, his sole purpose in unlocking the phone when law enforcement arrived, was to show law enforcement the pictures.

The good faith exception does not apply to facts, where, as here, an officer seizes a cell phone, takes it into police custody, drafts an affidavit and search warrant to be executed at the defendant's property, knowing the phone is not on the property, and later conducts several extractions on the phone, all without a search

24

warrant. Each of said searches violates the Fourth Amendment protecting against illegal searches. No court has previously recognized a holiday weekend as providing a reason not to comply with the laws and procedures in place to guarantee every individual protections afforded by the United States Constitution.

The independent source doctrine does not apply to a set of facts, where, like here, there is no independent source. Here, the police officer, after performing extractions on the cell phone, documented what those extractions uncovered and forwarded a supplemental report to the state prosecutor, who in turn contacted the federal government, who then assigned a special agent. The special agent here, then contacted the police officer, was made aware of all of the information in the supplemental report, including the information from the warrantless extractions, and then, because he had concerns by his own testimony that the searches were conducted without a warrant, sought a federal search warrant. There is not one piece of evidence in the case suggesting the source was independent; rather, the federal agent sought a search warrant for specific evidence of which he was already aware, due to his concerns it was obtained illegally.

The district court was unable to make the required finding of fact that a search warrant would have been sought without the illegal earlier searches conducted, because there is no evidence suggesting the federal government would have even been contacted, much less opened an investigation and sought a federal

25

search warrant, but for the warrantless extractions of the cell phone while in police custody. The exclusionary rule is appropriately applied here to deter this sort of police conduct in the future.

## ARGUMENT

I.    A private citizen who unlocks a phone to show a police officer images on a phone is not acting under the private search exception, but if the exception is found to apply, the officer cannot under the private search exception further examine the seized phone without a search warrant.

    a.    The district court erred in finding that the private search exception applies where an individual unlocks a password protection phone without permission in order to show a law enforcement officer images contained on the phone.

    b.    The district court found, in adopting the Recommendation and Report from the Magistrate, that the private search doctrine does not extend to all of the thumbnail images in the photo album on Suellentrop's cell phone.

a.    The district court erred in finding that the private search exception applies where an individual unlocks a password protection phone without permission in order to show a law enforcement officer images contained on the phone.

Suellentrop maintains that the private search doctrine is not properly applied to these facts. As the Recommendation and Report notes, under the private search exception, "[t]he Fourth Amendment….does not extend to private searches that are neither instigated by nor performed on behalf of a governmental entity…{Rather, the] legality of later government intrusions must be tested by the degree to which they exceeded the scope of the private search." United States v. Starr, 533 F.3d 985, 994 (8th Cir. 2008) (citing United States v. Miller, 152F.3d 813, 815 (8th Cir. 1998).

Here, then the first question is whether Donnelly was acting as a private citizen or acting as an agent of the government when he showed the images on Suellentrop's phone to the police. While Suellentrop would agree that when Donnelly first searched his phone, without permission, he was acting on his own, Suellentrop maintains that when Donnelly again unlocked the phone for the sole purpose of showing the officer a picture, he was acting as an agent of the government.

In United States v. Highbull, --F.3d--,2018, 2018 WL 3322261(8th Cir. July 6, 2018), the Court identified three (3) factors to consider when deciding if a citizen acts as a government agent in conducting a search: 1- whether the government had knowledge of and acquiesced in the intrusive conduct, 2- whether the citizen intended to assist law enforcement or instead act to further his own

27

purposes; 3- whether the citizen acted at the government's request. A defendant bears the burden of proving by a preponderance of the evidence that a private party acted as a Government agent. <u>Highbull</u>, <u>Id.</u> at 2.

Suellentrop maintains that while the Report and Recommendations made a finding regarding the first "search" of the phone, the second search, as the phone again had to be unlocked without permission, implicates that there is no question at that point Donnelly unlocked the phone and showed an image to the responding officer for the sole purpose of assisting law enforcement.

The undersigned argues that it is notable not only that Suellentrop maintained that Donnelly was never given his password, or led to believe he could use the phone whenever he wanted to, but Donnelly himself testified that when he was permitted to use it, Suellentrop was "hawking over him." It is also distinguishable from some of the cases in that here, Donnelly had to unlock the phone a second time, without permission, before showing the images to the officer and this was done solely for the purpose of aiding the police in arresting defendant. Therefore, the private search exception should not apply to this case.

b. The district court found, in adopting the Recommendation and Report from the Magistrate, that the private search doctrine does not extend to all of the thumbnail images in the photo album on Suellentrop cell phone.

28

Even if this Court finds the private search doctrine applies, Suellentrop argues the Report and Recommendation is correct in finding that "the private search doctrine permits the government to review what Donnelly reviewed, but not more." (RR, 18, 2-3).

The Report and Recommendation found persuasive the Eleventh Circuit case of United States v. Sparks, 806 F.3d 1323 (11th Cir 2015) *cert. denied*, 136 S.Ct. 2009, 137 S.Ct. 34 (2016). As is stated in the report, the case involved a Walmart employee who found a phone, looked at pictures, showed the pictures to a second employee who looked at the pictures, and called the police. While the district court in Sparks found that the private search conducted by the employees encompassed the entire digital photo album, the Court of Appeals reversed, noting that while the employee was able to discern the images of the photos in the album, she had only reviewed one of two videos. Id. at 1135. Therefore, the detective had exceeded the scope of the private search by opening and viewing another video that no employee had viewed. The court found this exceeded, not replicated, the breadth of the private search. Id. at 1336.

Just as the district court found this an appropriate analytical framework for this case, Suellentrop argues the appellate court should as well. As the district court found, here, Donnelly testified that he did not look at all of the thumbnail images. Second, while in Sparks the employees recognized suspected child

29

pornography, here, Donnelly testified when the image were thumbnails, he could not "make them all out" and that "the main images were kind of a little blurry at that size until [he] zoomed in on them. Further he testified he only enlarged some of the thumbnail images and viewed only one video. (RR 21)

The Report and Recommendation found the Government only proved with specificity that Donnelly looked at the image in Government's Exhibit 5, the video in Government's Exhibit 6, and the images that had penises superimposed on them that were not exhibited. The district court held the private search doctrine covers those images but no more. (RR 22).

II. Evidence obtained after several searches conducted while the phone was in the custody of the sheriff's department without a search warrant must be suppressed as the searches were in violation of defendant's Fourth Amendment rights guaranteed by the United States Constitution.

    a. It is uncontroverted that the cellular telephone was in police custody at the time the subsequent forensic searches were conducted.

    b. It is uncontroverted that the search warrant fails to mention any cellular telephone.

    c. The district court erred in adopting the Recommendation and Report from the Magistrate that a good faith exception applies to the present case.

30

d.  The district court erred in adopting the Recommendation and Report from the Magistrate and its reliance on the line of cases cited for the good faith exception to apply when the cell phone was not attached or present on the property to be searches, as the Government's evidence in its entirety was obtained from the cellular telephone omitted from the search warrant.

It is well established that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment- subject only to a few specifically established and well-delineated exception." Katz v. United States, 389 U.S. 347, 357 (1967)(footnote omitted)).  Police are generally not allowed, without a warrant, to search digital information on a cell phone seized from an individual who has been arrested. Riley v. California, 134 S.Ct. 2473; 189 L.Ed.2d 430 (2014).

Suellentrop is aware that the Government is not arguing that the searches conducted in the present case were searches incident to arrest, clearly impermissible under Riley.  However, Suellentrop maintains, and the evidence clearly illustrates that is exactly what Sergeant Poe was doing when he searched the seized telephone and explains completely why he did not include the cell phone in his application—because he didn't believe he needed to.

Appellate Case: 19-1002    Page: 31    Date Filed: 04/01/2019 Entry ID: 4772778

a. It is uncontroverted that the cellular telephone was in police custody at the time the subsequent forensic searches were conducted.

The following facts are uncontroverted: The defendant's phone was seized almost immediately after the responding officer's arrival on the scene. The responding officer turned the phone off, and it was turned over to another officer who placed it into his pocket. The phone has never been out of police custody since that time.

b. It is uncontroverted that the search warrant fails to mention any cellular telephone.

Sergeant Poe told the defendant, "[y]ou've been pretty honest about what's on the phone. I appreciate that. We just wanna (sic) make sure that nothing else is in that **house** (emphasis added). So we are asking for consent to search your **house** (emphasis added). (DCDM, 38, 84; Government's 9A, p 10). Sergeant Poe later tells the defendant (if he doesn't sign the consent to search the home) "I'm gonna have to apply for a search warrant to search the **home**." (DCDM, 38 84; Government's 9A, p 11). He continues during his discussion with prosecutor, "We have the phone. Uh, we wanna (sic) check the house to make sure there is no more child porn in there." Ibid.

32

The affidavit filed and drafted by Sergeant Poe does not state that he asked Suellentrop if he could search his phone. The affidavit does state that Sergeant Poe knew the phone was in their custody. The affidavit, drafted by Sergeant Poe, clearly states he was of the belief there was "**other**" evidence that was in the residence. (DCDM 38, 98, 9-12; affidavit of Poe) Sergeant Poe drafted what he wished to search and also included all of the property around Suellentrop's home, including the garage. Nowhere did he include a phone.

Suellentrop argues and the evidence suggests, that Sergeant Poe **did** conduct the subsequent repeated extractions/searches incident to arrest. And said searches are unconstitutional, whether or not Sergeant Poe was aware that Riley has made searches of cell phones unconstitutional absent a search warrant.

c. The district court erred in adopting the Recommendation and Report from the Magistrate finding that the good-faith exception applies to the facts present in this case.

The district court found, in adopting the Recommendation and Report, [w]hen police obtain evidence in violation of the Fourth Amendment, that evidence is ordinarily subject to suppression under the exclusionary rule. See Houck, 888 F.3d at 959.

While the district court recognized that under Herring v. United States, 555

U.S. 135, 137 (2009), the question (of suppression) turns on the culpability of the

police and the potential of exclusion to deter wrongful police conduct, Herring also

set forth the pertinent analysis.  Additionally, Herring found that to trigger the

exclusionary rule, police conduct must be sufficiently deliberate that exclusion can

meaningfully deter it, and sufficiently culpable that such deterrence is worth the

price paid by the justice system.  Herring, Id. at 144.

In Herring, the officers acted on what they believed to be an active warrant

because a clerk, or non state actor, had not updated the computer properly.  Here,

all of the actions were taken by a state actor, Sergeant Poe.  Herring recognized

that a court may consider whether the error can be traced to a mistake by state

actor or others.  Sergeant Poe drafted the affidavit himself.  Sergeant Poe relayed

all of the information to the prosecutor.  Sergeant Poe obtained each of the cell

phone extractions without a warrant and memorialized the information he had

obtained without a warrant into a supplemental report that was forwarded to the

Jefferson County Prosecutor's office, and then the federal government.  Each of

Sergeant Poe's actions were deliberate and suggest he was completely unaware

that a police officer cannot search the contents of a cell phone seized incident to

arrest without a search warrant.

Appellate Case: 19-1002    Page: 34    Date Filed: 04/01/2019 Entry ID: 4772778

It is exactly this type of behavior that the exclusionary rule is meant to apply to in order to insure law enforcement officers follow the law in obtaining evidence- an insistence that deterrence makes less likely said mistakes will continue to occur in the future.

Herring found that the pertinent analysis of deterrence and culpability is objective, not subjective. The analysis is confined to the objectively ascertainable question as to whether a reasonably well- trained officer would have known that the search was illegal in light of all the circumstances. Herring, Id.

Under the good-faith exception, evidence seized pursuant to a search warrant later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable. Ibid. The court must look at the objectively ascertainable question of whether a reasonably well-trained officer would have known that the search was illegal despite a judge's issuance of the warrant. Id., citing United States v. Puckett, 466 F.3d 626, 630 (8th Cir. 2006).

There are four situations when the good-faith exception would not apply:

(1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;

(2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant;

Appellate Case: 19-1002     Page: 35     Date Filed: 04/01/2019 Entry ID: 4772778

(3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and

(4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

United States v. Jackson, 784 F.3d at 1231 (quoting Leon, 468 U.S. at 923, 104 S.Ct. 3405.)

In the instant case, Suellentrop argues that the warrant is so facially deficient as to suggest a search of the cell phone was authorized, that no police officer could reasonably presume the warrant to be valid as to the cell phone.

The evidence itself suggests the same. Special Agent Burbridge immediately recognized that the search warrant obtained did not mention any cell phone, and yet several searches absent a warrant had already been conducted. He testified, in fact, that is what caused him to seek a federal search warrant after the searches had already been completed. (DCDM 38 125)

Courts also look to see whether the conduct suggests recurring constitutional violations as opposed to a one-time incident in considering whether suppression is appropriate. In the present case, Suellentrop argues that the omission of the cell phone in the affidavit Sergeant Poe was deliberate as the facts suggest and Poe's actions confirm. Sergeant Poe's words themselves and actions suggest he was unaware that a search warrant was necessary to search the seized cell phone after Suellentrop was arrested.

Sergeant Poe's repeated searches, over the course of several weeks, suggest his actions are recurring. Here, when assessing the officer's good faith reliance on the search warrant under the <u>Leon</u> good faith exception, looking outside of the four corners of the affidavit and considering the totality of the circumstances, it is clear Sergeant Poe acted deliberately in searching the cell phone despite not including it in the affidavit for search warrant. <u>See</u> <u>United States v. Leon</u>, 468 U.S. 897, 921 (1984).

d. The district court erred in adopting the Recommendation and Report from the Magistrate and its reliance on the line of cases cited for the good faith exception to apply when the cell phone was not attached or present on the property to be searched, as the Government's evidence in its entirety was obtained from the cellular telephone omitted from the search warrant.

As the magistrate's report recognized, [w]hen police obtain evidence in violation of the Fourth Amendment, that evidence is ordinarily subject to suppression under the exclusionary rule. <u>United States v. Houck</u>, 888 F.3d 957 (8th Cir 2018). Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." <u>Herring v. United States</u>, 555 U.S. 135 (2009).

Appellate Case: 19-1002    Page: 37    Date Filed: 04/01/2019 Entry ID: 4772778

The district court, in adopting the Recommendation and Report of the magistrate, accepted that the facts and circumstances of the present case are analogous to <u>Houck</u> and instructive.

In <u>Houck</u>, however, the case questioned whether or not an RV, *located on the property* (emphasis added) was incorporated into a search warrant that included the language "any vehicles…present at the time of executions…"

The RV was not connected to a vehicle, but was connected to water and electric lines.  As the Recommendation and Report sets forth all pertinent facts, the defendant will not belabor them here.  However, the 8th Circuit reversed the grant of a motion to suppress, assumed that the RV fell outside of the warrant, but "concluded that the officers made, at most an honest mistake in interpreting the warrant to include the RV.*"* <u>Houck</u>*,* <u>Id</u>., at 960.  (<u>citing</u> <u>Maryland v. Garrison</u>*,* 480 U.S. 79, 87 (1987)).

In the present case, the property that was searched was never on the property at the time any search could have been contemplated, in good faith or otherwise, as relied upon in <u>Houck</u>.   Rather, at the time the search warrant affidavit was drafted, by Sergeant Poe, who also conducted the later searches, the cell phone was in the custody of law enforcement and Sergeant Poe knew it.

38

The holding in <u>Houck</u> does not support an extension to a case where as here, an officer believed he could search the phone incident to arrest and as the phone was in police custody, failed to inquire or take any action to insure his acts would comport with the Fourth Amendment. Rather, later, and only after a federal search warrant is sought and granted to obtain entirely identical information that has already been extracted, reported, reviewed and sent to the federal government, does a claim that he believed, despite his own statements and actions, that the cellular phone was incorporated into his search warrant.

The district court credited Sergeant Poe's testimony that he believed that the search warrant covered the phone; however, during his own conversations with the Assistant Prosecuting attorney, as noted above, Sergeant Poe never references from his end, an intention to include the cell phone, rather, an intention to "also" search the home in case additional evidence may be found.

The Government's admitted exhibits illustrate that at no time did Sergeant Poe ask defendant to search the cell phone; Sergeant Poe did not include the cell phone anywhere in the affidavit or request he drafted; Sergeant Poe did not include the cell phone anywhere in his search warrant. Sergeant Poe did not include anywhere in his police report that his search warrant application was intended to cover the cell phone. Sergeant Poe calls the cell phone what it is, a cell phone,

when referring to what he seized in all of his writings, except the search warrant where there is no mention of a cell phone.

The Report and Recommendation's reliance on unusual circumstances, in that someone other than the owner of the phone turned it over and because it was a holiday weekend, cannot stand as reasons to abort the protections afforded by the Fourth Amendment to the United States Constitution.

Each of the cases reviewed and incorporated into the Recommendation and Report adopted by the district court involve a third party turn-over, without resorting to an "unusual circumstance" exception. Second, the fact that it was a holiday weekend does not from the record seemed to have caused anything different than any weekend when the courts are not open. The police officer calls the on-call prosecutor who then contacts a judge when he/she believes a warrant is necessary. Further, Sergeant Poe was in possession of the most information regarding the entire incident and drafted all the necessary documents.

Suellentrop argues that instead, the state issued warrant used to conduct several extractions from defendant's phone, without a warrant, though the phone was in police custody, does indeed violate Defendant's Fourth Amendment rights deliberately, recklessly, and with gross negligence (in that Sergeant Poe continued to perform warrantless extractions). United States v. Davis, 564 U.S. 229, (2011).

The purposes of the exclusionary rule would be well served in the present circumstance to encourage law enforcement officers to follow the letter of the law, and, if any law enforcement officer is in doubt as to what that is, that he/she consult with a knowledgeable person as opposed to forging ahead repeatedly for months.

III. The district court erred in adopting the Magistrate's finding that the federal search warrant is admissible under the independent source doctrine as there is no independent source.

    a. The defendant was entitled to a Franks hearing as same would have allowed testimony that illustrates that there would not have been a federal investigation, save for the warrantless searches of the cellular telephone.

    b. In the present case, the federal government was not contacted until after the warrantless searches had occurred. Special Agent Burbridge testified that he made a decision to conduct an investigation after receiving not the initial report, but in addition, the supplemental report, which contained all the fruits of the warrantless search.

a. The defendant was entitled to a Franks hearing as same would have allowed testimony that illustrates that there would not have been a federal investigation, save for the warrantless searches of the cellular telephone.

As the magistrate noted, it is not disputed that Special Agent Burbridge's affidavit omitted facts relative warrant. Nowhere in the affidavit is it mentioned that Sergeant Poe, after taking possession of the cell phone at the time of the arrest and placing it in police custody, conducted several extraction searches from the phone without a search warrant, which were detailed in reports that not only resulted in additional State charges, but led to the State contacting the federal government.

Further, and as is noted in the Recommendation and Report at page thirty (30), "one can argue that the two paragraphs included representations, that, without additional context, can be characterized as false. Paragraph 24 of the affidavit states, "Deputy Roberts seized the cellular telephone and no additional examination was done…" (DCDM 38, 127, 1-5; Exhibit 14). In addition, paragraphs 27-28 note that a state search warrant had been issued, and paragraph 29, states that "the search did not yield any additional items of evidentiary value relating to sodomy or child pornography." Id. While it is true that pursuant to the state search warrant, executed at the address of Suellentrop, no additional items of evidentiary value relating to sodomy or child pornography were done, in reality,

42

there were several extractions of the phone that was not included in the search warrant, and as set forth above, those extractions not only led to 16 additional State charges, but led to the State contacting the federal government for their participation.

Respectfully, while the Government argued the facts were omitted in order to allow the district court an untainted view of the facts that were present on the date the affidavit was signed, in fact, the affidavit then, is false as it was prepared, drafted and sworn to months later with no indication to the court that the facts relayed were as they appeared on January 1. The sworn statement is false. While the untainted rendition of the facts may have allowed the magistrate to make a probable cause determination as was approved in United States v. Bah, 794 F.3d 617 (6th Cir. 2015), it did nothing to remove the taint of the facts of the case. Further, to suggest that is now permissible for a law enforcement to craft a knowingly false affidavit, and swear to its veracity in order to obtain a search warrant, only later to claim it was false in order to allow a magistrate an untainted view, flies in the face of constitutional jurisprudence.

The district court, in adopting the Recommendation and Report of the magistrate, found that Suellentrop was not entitled to a Franks hearing as he had failed to meet the burden required. As noted in the Recommendation and Report, "where a defendant argues that the affidavit omitted material facts the Court

43

Amendment requires a hearing where the defendant makes a substantial showing that (1) the affiant omitted facts with the intent to mislead the issuing judge, or omitted facts in reckless disregard of the fact that the omissions would mislead and (2) the affidavit, if supplemented by the omitted information could not support a finding of probable cause." United States v. Gater, 868 F.3d 657, 659-660 (8th Cir. 2008) citing United States v. Clapp, 46 F.3d 795 (8th Cir. 1995).

The Recommendation and Report essentially found that even if the Court found evidence as to (1), because (2) was not satisfied Suellentrop was not entitled to a Franks hearing. Suellentrop respectfully argues that as the Court itself found that there are omissions and inaccurate facts contained in the sworn statement of Special Agent Burbridge, depriving defendant of a full Frank's hearing inhibited his ability to elicit additional facts that clearly illustrate that there remains no independent source of the information.

b. In the present case, the federal government was not contacted until after the warrantless searches had occurred. Special Agent Burbridge testified that he made a decision to conduct an investigation after receiving not the initial report, but in addition, the supplemental report, which contained all the fruits of the warrantless search in graphic detail.

44

The independent source doctrine allows trial courts to admit evidence obtained in an unlawful search if officers independently acquired it from a separate, independent source.  Murray v. United States, 487 U.S. 533, 537 (1988).  A search warrant may serve as an independent source.  See United States v. Rodriquez, 834 F.3d 937 (8th Cir. 2016).

This court has found that "to determine whether a warrant serves as an independent source, the court asks first, would the police have applied for the warrant had they not acquired the tainted information; and second, do the application affidavits support probable cause after the tainted information has been redacted from them."  Id.

Notably, this court has also held that "[i]n this regard, a reviewing court generally may not infer from the circumstances that the police inevitably would have sought a warrant; findings of fact by the district court are required." Id., quoting United States v. Leverington, 397 F.3d 1112, 115 (8th Cir. 2005).

While the district court, in adopting the Recommendation and Report of the magistrate, found that the Special Agent would have applied for the warrant "even if there were no concerns regarding the State-issued warrant," (R&R, 34), it failed to make any finding of fact required that "the police would have applied for the warrant had they not acquired the tainted information." See Rodriquez.

45

IV.     The district court erred in adopting the Magistrate's conclusion that based on the facts and circumstances of the case, the evidence need not be suppressed as fruit of the poisonous tree.

a.  The report and recommendation is silent as to whether the federal government would have conducted any investigation, or sought a warrant, had it not been aware of the tainted evidence obtained by the warrantless searches, contrary to precedent.

b.  There is no exception to the general warrant requirement to obtain a search warrant present in this case.


a.  The report and recommendation is silent as to whether the federal government would have conducted any investigation, or sought a warrant, had it not been aware of the tainted evidence obtained by the warrantless searches, contrary to precedent.

The Report and Recommendation found the following facts in regards to whether or not the government would have obtained a warrant:

"The record established at the evidentiary hearing supports a conclusion that the FBI would have applied for a search warrant even if there were no concerns regarding the State-issued warrant. S/A Bainbridge testified that, after he received reports from Jefferson County Sheriff's Department, he determined he would apply for a federal warrant." (R&R, p. 34)

Appellate Case: 19-1002     Page: 46     Date Filed: 04/01/2019 Entry ID: 4772778

Suellentrop notes that the reports Special Agent Bainbridge received from the Jefferson County Sheriff's Department contained all of the tainted evidence. He reviewed all of the tainted evidence, and then made a determination to not only to conduct an investigation, but apply for a federal warrant.

> The district court went on to find:"[b]ased on this record, the undersigned finds by a preponderance of the evidence, that, once a federal investigation was underway, S/A Burbridge would have applied for a federal warrant regardless of whether he also harbored concerns as to the scope of the prior State-issued search warrant." (R&R p. 35)

Notably absent from this finding, is whether the federal government would have ever initiated an investigation at all, absent being informed of the tainted evidence. The case law is clear that the finding of fact necessary is that Special Agent Burbridge would have applied for a warrant absent knowing of the tainted evidence. The evidence is clear he was aware of all of the tainted evidence from the onset of his investigation and therefore became a part of one on-going tainted investigation. Such a sequence of events cannot be said to be independent.

A review of the progression of the case itself illustrates there would have been no federal investigation without the tainted evidence. It is undisputed that no one contacted the federal government in regards to initiating any investigation until it received the supplemental report from Sergeant Poe that detailed each and all of the additional contents of the phone he had retrieved from his extractions without a

47

warrant (Addendum Jefferson County Supplemental Report). The Jefferson County Prosecutor's office filed its original case against Suellentrop and proceeded as is customary in associate circuit court.

Following receipt of the supplemental report, which details each of the extractions and contents of the phone, (Addendum, Jefferson County Supplemental Report), the Jefferson County Prosecutor's office contacted the United States Attorney's office, who in turn, assign Special Agent Burbridge. It is undisputed that the Special Agent reviewed all of the tainted evidence prior to initiating an investigation, seeking a search warrant, or pursuing federal charges against Suellentrop.

      b.  There is no exception to the general warrant requirement to obtain a search warrant present in this case.

The Supreme Court in the <u>Riley</u> cases reviewed the long line of cases that provided an exception to the general warrant requirement when the search occurs incident to arrest. The Court specifically declined to include in the exception searches of cell phones seized incident to arrest.

The undersigned has reviewed the long line of cases that have interpreted the exception carved out in <u>United States v. Leon</u>, 468 U.S. 897 (1984), where an officer acting in good faith on executing a search warrant signed by a detached

48

magistrate was later found to be acting on a warrant without probable cause. The undersigned also recognizes that when the police conduct a search in objectively reasonable reliance on a warrant later held invalid, the evidence may be admissible. <u>Davis v. United States</u>, 564 U.S. 229 (1984).

Here, the simplest way to review the record illustrates why the evidence must be suppressed. The officer, unaware of <u>Riley</u>, despite it being issued in 2014, believed he could search the cell phone that one of his officers seized and turned over to him, incident to arrest. Sergeant Poe's words, in stating that he wanted to search the house for **other** evidence, in stating to the prosecuting attorney he wanted a search warrant for the house to search for **other** evidence, his lack of inclusion of the cell phone in the affidavit and warrant he drafted, the fact he knew that the search warrant was not at the location where he applied for a search warrant, his repeated extractions and review of the contents of the phone over the course of more than a month, his drafting of the supplemental report detailing specifically what his searches uncovered, forwarding the report to the prosecuting attorney, who in turn forwarded it to the federal government, all suggest he was unaware of <u>Riley</u>.

The federal government, upon learning that the contents of the phone had all been retrieved without a warrant, immediately sought to correct the issue by applying for a warrant. The problem, despite all of their legal gymnastics

Appellate Case: 19-1002    Page: 49    Date Filed: 04/01/2019 Entry ID: 4772778

however, remains - that without the warrantless searches of the phone and supplemental reports, there remains nothing in the record to suggest the government would have ever been contacted, or sought a search warrant, as required by precedent. The district court was unable to make the requisite findings of fact because all facts suggest there would not have been a federal investigation.

The exclusionary rule is unquestionably triggered in this case and the police conduct sufficiently deliberate, that is, ignorance of the state of the law, that exclusion can meaningfully deter such conduct in the future and sufficiently culpable that such deterrence is worth the price paid by the justice system.

## CONCLUSION AND RELIEF SOUGHT

For all of the foregoing reasons, the judgment of the District Court, in adopting the Findings of Fact and Recommendation of the Magistrate, should be REVERSED with a finding the Motion to Suppress should be granted, or, in the alternative, a remand for rehearing that would allow the requisite findings of fact as to whether any federal investigation would have been initiated be made.

# CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that pursuant to FRAP32(a)(7)(3) this brief complies with the word limits in that it contains 11,934 words, excluding the addendum and complies with the appropriate font (Times New Roman, 14 pt).

_/S/  Joseph M. Hogan_____

Joseph M. Hogan 47008MO

Attorney for Appellant

7751 Carondelet

Clayton, Mo  63105

(314) 863-9898

Appellate Case: 19-1002    Page: 51    Date Filed: 04/01/2019 Entry ID: 4772778