No. 19-1002
*Crimal*

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

*UNITED STATES OF AMERICA*

*Plaintiff – Appellee*

*v.*

*DENNIS SUELLENTROP, JR.*

*Defendant – Appellant*

Appeal from the United States District Court
for the Eastern District of Missouri

**BRIEF OF PLAINTIFF - APPELLEE**

**JEFFREY B. JENSEN**
**United States Attorney**

**ROBERT F. LIVERGOOD**
**Assistant United States Attorney**
**Thomas F. Eagleton U.S. Courthouse**
**111 South Tenth Street, 20th Floor**
**St. Louis, Missouri 63102**

## SUMMARY AND POSITION ON ORAL ARGUMENT

Appellant/Defendant Dennis Suellentrop, Jr., pleaded guilty to seven counts of Production of Child Pornography and one count of Possession Child Pornography. As part of his Plea Agreement, Suellentrop reserved his right to appeal the denial of his motions to suppress evidence and statements. On appeal, Suellentrop contends the district court erred in denying his motion to suppress the private search of his cell phone and the subsequent search of the cell phone by local law enforcement officers. Further, Suellentrop contests the district court's finding that the federal search warrant permitted searching of the cell phone under the independent source doctrine, and determination that the fruit of the poisonous tree doctrine did not apply.

Suellentrop's claims are meritless. The record demonstrates that the district court did not err in concluding that the private search doctrine applied, that the local officers could search the cell phone, and that the independent source doctrine applied.

The United States does not believe that oral argument is necessary in this case. The issues raised can be addressed by review of the record and application of existing law. However, should the Court grant Suellentrop's request for oral argument, the United States respectfully requests an equal amount of time to respond.

i

# TABLE OF CONTENTS

**Page No.**

Summary and Position on Oral Argument.................................................. i

Table of Contents ............................................................................... ii

Table of Authorities ........................................................................... iv

Statement of the Issues Presented ........................................................1

Statement of the Case .........................................................................2

Summary of the Argument...................................................................14

Argument............................................................................................16

    I.    **THE DISTRICT COURT PROPERLY RULED THAT THE PRIVATE SEARCH DOCTRINE APPLIED**......................................16

        A.    Standard of Review .......................................................16

        B.    Analysis .......................................................................17

            1.    The District Court Properly Found That Deputy Roberts' Initial Warrantless Seizure and View of the Cell Phone was Justified by the Private Party Search Exception to the Warrant Requirement. .......................................17

            2.    Private Party Searches do not involve the Fourth Amendment.......................................................17

    II.    **THE DISTRICT COURT PROPERLY FOUND THE GOOD FAITH EXCEPTION TO THE XCLUSIONARY RULE APPLIED WHEN LAW ENFORCEMENT OFFICERS FORENSICALLY EXAMINED SUELLENTROP'S CELL PHONE**.............................23

        A.    Standard of Review .......................................................23

        B.    Analysis .......................................................................23

Appellate Case: 19-1002   Page: 3   Date Filed: 06/05/2019 Entry ID: 4794555

1. The District Court Properly Found That the Good Faith Exception Applied. ..............................................23

2. The search warrant was not facially defective..............................27

III. **THE DISTRICT COURT PROPERLY FOUND THE FRUITS OF THE FEDERAL SEARCH WARRANT WERE ADMISSIBLE UNDER THE INDEPENDENT SOURCE DOCTRINE.**..................29

A. The district court did not abuse its discretion in declining to hold a *Franks* hearing. ................................29

1. Standard of Review....................................................29

2. Analysis....................................................................29

B. The district court properly concluded that the federal search warrant provided an independent source for the evidence contained in Suellentrop's cell phone............................32

IV. **THE DISTRICT COURT PROPERLY FOUND THE EVIDENCE ON SUELLENTROP'S CELL PHONE SHOULD NOT BE SUPPRESSED AS FRUIT OF A POISONOUS TREE.**.....................35

A. Standard of Review .......................................................35

B. Analysis .........................................................................35

Conclusion ...........................................................................37

Certificate of Compliance .........................................................38

Certificate of Service ................................................................39

iii

**Cases**

*Franks v. Delaware*, 438 U.S. 154 (1978)....................................................1, 29

*Herring v. United States*, 555 U.S. 135 (2009)...............................................1, 25

*Riley v. California*, 573 U.S. 373, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014)..........
.................................................................................................... 17, 28, 36

*Segura v. United States*, 468 U.S. 796, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984).....
....................................................................................................................33

*Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602 (1989) ............................1, 17

*United States v. Brooks*, 715 F.3d 1069 (8th Cir. 2013)................................... 33, 34

*United States v. Calandra*, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974).....
....................................................................................................................24

*United States v. Class*, 883 F.3d 734 (8th Cir. 2018) .........................................1, 35

*United States v. Clay*, 646 F.3d 1124 (8th Cir. 2011) .........................................1, 26

*United States v. Crissler*, 539 F.3d 831 (8th Cir. 2008) .........................................32

*United States v. Davis*, 760 F.3d 901 (8th Cir. 2014).............................................33

*United States v. Diaz*, 685 F.2d 252 (8th Cir. 1982) ..............................................36

*United States v. Esquivel*, 507 F.3d 1154 (8th Cir. 2007) .......................................16

*United States v. Fiorito*, 640 F.3d 338 (8th Cir. 2011)...........................................23

*United States v. Gater*, 868 F.3d 657 (8th Cir. 2017).............................................29

*United States v. Goodale*, 738 F.3d 917 (8th Cir. 2013) .....................................1, 18

*United States v. Hager*, 710 F.3d 830 (8th Cir. 2013)........................................1, 32

*United States v. Highbull*, 894 F.3d 988 (8th Cir. 2018)................. 1, 18, 20, 21, 22

Appellate Case: 19-1002    Page: 5    Date Filed: 06/05/2019 Entry ID: 4794555

*United States v. Houck*, 888 F.3d 957 (8th Cir. 2018)..................................... 1, 26, 27

*United States v. Jackson*, 67 F.3d 1359 (8th Cir. 1995) .............................................23

*United States v. Jacobsen*, 466 U.S. 109, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984) ..................................................................................................................22

*United States v. Johnson*, 78 F.3d 1258 (8th Cir. 1996)..........................................26

*United States v. Jones*, 254 F.3d 692 (8th Cir. 2001).............................................16

*United States v. Kattaria*, 553 F.3d 1171 (8th Cir. 2009) .......................................30

*United States v. Leon*, 468 U.S. 897 (1984) ..........................................................1, 23

*United States v. Malbrough*, 922 F.2d 458 (8th Cir. 1990) .....................................17

*United States v. Mathison*, 157 F.3d 541 (8th Cir. 1998)........................................30

*United States v. Neville*, 516 F.2d 1302 (8th Cir. 1975)................................. 1, 4, 36

*United States v. Ortiz-Cervantes*, 868 F.3d 695 (8th Cir. 2017) ...................... 24, 27

*United States v. Reed*, 921 F.3d 751 (8th Cir. 2019) ...........................................1, 33

*United States v. Smith*, 820 F.3d 356 (8th Cir. 2016).............................................16

*United States v. Starr*, 533 F.3d 985 (8th Cir. 2008)........................... 1, 18, 21, 22

*United States v. Swope*, 542 F.3d 609 (8th Cir. 2008).........................................1, 33

*United States v. Tuton*, 893 F.3d 562 (8th Cir. 2018)..............................................35

*United States v. Warford*, 439 F.3d 836 (8th Cir. 2006) .........................................24

## <u>Statutes</u>

U.S. Const. amend. IV ...............................................................................................17

Appellate Case: 19-1002    Page: 6    Date Filed: 06/05/2019 Entry ID: 4794555

## STATEMENT OF THE ISSUES PRESENTED

**I.  Whether the district court properly found that the private search exception to the search warrant requirement applied**

*Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 614 (1989)

*United States v. Goodale*, 738 F.3d 917 (8th Cir. 2013)

*United States v. Highbull*, 894 F.3d 988 (8th Cir. 2018)

*United States v. Starr*, 533 F.3d 985 (8th Cir. 2008)

**II.  Whether the district court properly determined that local law enforcement could search the cellular phone**

*Herring v. United States*, 555 U.S. 135 (2009)

*United States v. Clay*, 646 F.3d 1124 (8th Cir. 2011)

*United States v. Houck*, 888 F.3d 957 (8th Cir. 2018)

*United States v. Leon*, 468 U.S. 897 (1984)

**III.  Whether the district court properly determined that the independent source doctrine applied**

*Franks v. Delaware*, 438 U.S. 154 (1978)

*United States v. Hager*, 710 F.3d 830 (8th Cir. 2013)

*United States v. Reed*, 921 F.3d 751 (8th Cir. 2019)

*United States v. Swope*, 542 F.3d 609 (8th Cir. 2008)

**IV.  Whether the district court properly determined the fruit of the poisonous tree doctrine did not apply**

*United States v. Class*, 883 F.3d 734 (8th Cir. 2018)

*United States v. Neville*, 516 F.2d 1302 (8th Cir. 1975)

Appellate Case: 19-1002    Page: 7    Date Filed: 06/05/2019 Entry ID: 4794555

## STATEMENT OF THE CASE

### Facts

Suellentrop video recorded himself sexually abusing infant "M," from the time "M" was less than two-months old to the time she was six-months old. Sentencing Transcript, (DCD 91, p. 7). He forced his tongue into her vagina and anus, he put his penis into her mouth, and ejaculated onto her mouth. Suellentrop forcibly stuck a baby bottle's nipple into "M's" vagina and then into her mouth. *Id*., pp. 7-10. An individual named Paul Donnelly found the images and videos of the abuse on January 1, 2017, and reported it the police.

Paul Donnelly had known Suellentrop for about a year and lived in a camper parked in Suellentrop's driveway. The trailer was about thirty feet from the house. Evidentiary Hearing Transcript, (DCD 38, p. 32) (hereinafter, TR.). During the winter, Suellentrop and his girlfriend, S.M., invited Donnelly to move inside the house because of the cold temperatures, although during the evidentiary hearing conducted in this case, Suellentrop denied allowing Donnelly to live in the residence. TR., pp. 7, 151-2. Suellentrop testified that on Thanksgiving 2016, Suellentrop and his parents told everyone they must leave the property, including S.M., Donnelly and Matt. TR., p. 154. Suellentrop did not testify whether "M" was permitted to remain on the property. Suellentrop acknowledged that Donnelly's trailer remained

2

on his property and that Donnelly lived in the trailer. Suellentrop never called the police to report that Donnelly was still living there. Tr., p. 157.

Donnelly said he had permission to be inside the house and had free access to the home. TR., pp. 47-8. Donnelly's bedroom was the back room on the right. TR., p. 31. Matt also lived at the house. TR., p. 32. Also living in the residence was Suellentrop and "M." "M "was born in June of 2016. Suellentrop also lived with S.M., his girlfriend and the mother of "M."

On December 31, 2016, S.M., Donnelly, and a friend went to the River City Casino and then partied and drank the rest of the night. Donnelly returned to the residence around 7:00 a.m. on January 1, 2017. The only people present were Suellentrop and Donnelly. TR., p. 8.

When Donnelly arrived, he found Suellentrop passed out in his bedroom. Donnelly wanted to make a telephone call but did not have a phone. He decided to use Suellentrop's cell phone, an LG cell phone. Donnelly said that Suellentrop had previously permitted Donnelly to use his phone to make calls, use Facebook, and to check his Google account. TR., pp. 9-10. During the evidentiary hearing Suellentrop denied giving Donnelly permission to use his phone. TR., p. 152. Suellentrop testified that Donnelly learned the passcode by watching Suellentrop use the phone. *See* TR., p. 152. Even though Suellentrop knew that Donnelly had the passcode for

3

his phone, Suellentrop did not change it, despite knowing how to change it. TR., p. 159. Suellentrop also knew that Donnelly had used his phone. TR., pp. 159-60.

According to Donnelly, Suellentrop knew he was using the LG cell phone. TR., pp. 9-10, 37-8. Donnelly believed he had access to most everything on the phone. TR., p. 10. Suellentrop never told him not to go into the phone. TR., p. 47.

On January 1, 2017, Donnelly went to Suellentrop's bedroom, knocked on the door, and removed the phone from its charger. TR., pp. 11, 34-5. Suellentrop was passed out at the time. TR., p. 21. Donnelly used the phone to call his ex-girlfriend and checked on Facebook. TR., p. 11. Afterwards, he got "nosey" and snooped through the contents of the phone. TR., p. 11. Donnelly pulled up pictures on the phone. He started scrolling the pictures in the photo app. TR., pp. 15-16. He did not scroll through all of the pictures. TR., p. 17. He enlarged some of the pictures on the phone. TR., p. 16. When he did, he saw child pornography images of "baby 'M'". TR., p. 17. In particular, he saw the child pornography image depicted in Government's Exhibit 5. He also saw a child pornography video of baby "M" as depicted in Government's Exhibit 6.

Not only did he see images of "M" being sexually abused, Donnelly also saw pictures with images of penises superimposed on them. TR., p. 18. The pictures appeared to be Photoshopped. *Id*.

4

When Donnelly looked at the pictures, no one else was present and law enforcement was not involved. TR., pp. 20-1. Suellentrop was passed out in his room. TR., p. 21.

After Donnelly saw the pictures, he called the house where he believed "M's" mother was to tell her what he found. TR., p. 40. He talked to Matt (who was the same Matt who resided in Suellentrop's residence). TR., p. 41. Donnelly told Matt what he had found on Suellentrop's phone. TR., p. 42. Matt then told S.M. TR., p. 44.

Afterwards, Matt came over to Suellentrop's residence. TR., p. 43. Donnelly unlocked the LG cell phone and showed Matt what he had found. TR., pp. 44, 49. Donnelly went through a couple of images with Matt, but not all of them. TR., p. 50. The police later arrived. TR., p. 44.

At about 1:38 p.m., Jefferson County Sheriff's Deputy Dennis Roberts arrived. TR., p. 52. Donnelly had not called the police, but assumed baby M's mother called the police after he told her about the pictures. Deputy Roberts was there on a "check the well-being" call, to check the welfare of a child. TR., pp. 52, 63. He arrived in a fully-marked patrol vehicle but did not have his lights or siren activated. TR., p. 53. Deputy Roberts was armed and wearing his uniform with his weapon in his holster. TR., p. 53. Deputy Robert's weapon remained in the holster throughout the incident. TR., pp. 57.

5

Donnelly walked up to Deputy Roberts and said that he borrowed his roommate's phone to call his girlfriend. TR., p. 53. When he finished talking with his girlfriend, Donnelly said he looked through the phone and found inappropriate images. TR., p. 54. Donnelly told Deputy Roberts that he had seen a picture of "M" with a penis in her face and ejaculation, a picture of a penis inside M's mouth, and a video that depicted Suellentrop playing with M's butt and vaginal area that also depicted Suellentrop "French kissing" "M." TR., pp. 55-6. Donnelly then showed Deputy Roberts the picture. TR., p. 54. Donnelly thrust the LG cell phone at Deputy Roberts' face and put the phone in his hand. TR., p. 67. This was the same picture as in Government's Exhibit 5. TR., pp. 54-5. The picture made the officer sick. TR., p. 45. The officer then seized the phone containing picture. TR., pp. 24, 55. Deputy Roberts turned it off and put it in his pocket. TR., 55. Donnelly did not object because he "wanted that thing away," because the pictures made him sick. TR., p. 21, 24.

Deputy Roberts never asked Donnelly to go through the phone. TR., p. 67. Deputy Roberts believed that Donnelly had the authority to show the contents of the phone. TR., pp. 67-8. Deputy Roberts did not search the contents of the phone any further before turning it off. *See* TR., p. 68.

Deputies Lunsford and Loness arrived to assist. TR., p. 55. They went to the door of Suellentrop's residence and knocked. When no one answered, Donnelly said,

6

"I've been staying there, and I'm allowed to go in." TR., pp. 25, 56. Donnelly then opened the door and pointed to room where Suellentrop was located. TR., pp. 25, 56.

Deputies Lunsford, Loness, and Roberts went inside the residence and escorted Suellentrop to Lunsford's police vehicle. Deputy Lunsford sat in the driver's seat and Suellentrop sat in the front passenger's seat. TR., p. 73. Deputy Lunsford had an Advice of Rights form. At about 1:59 p.m., she filled out the form with Suellentrop and read him his *Miranda* rights. TR., pp. 74-7; *see also* Government Exh. 8 (Advice of Rights form); Government Exh. 9 (recorded interview); Government Exh. 9A (transcript), p. 1 (ADD, p. 1). Suellentrop put his initials next to each of the rights indicating that he understood them, waived his rights, and agreed to talk with Deputy Lunsford. TR., p. 79; *see also* TR., p. 81. Suellentrop also made a written statement. TR., p. 81; Government Exh. 8. Deputy Lunsford also asked Suellentrop for permission to search his phone, and Suellentrop refused. TR., pp. 90, 111. After the interview, Suellentrop was taken to the Jefferson County Sheriff's Department's jail where he was booked and processed.

Shortly after 2:00 p.m., Sergeant Scott Poe of the Jefferson County Sheriff's Office arrived. TR., p. 108. Sergeant Poe took custody of Suellentrop's LG cell phone that had been seized by Deputy Roberts. TR., p. 92. The phone had been turned off when Sergeant Poe took received it. TR., p. 93. Sergeant Poe did not turn

7

the phone on and did not try to examine its contents. Sergeant Poe kept the phone in his care until the phone could be forensically examined. TR., p. 93.

Sergeant Poe went to Deputy Lunsford's police vehicle to speak with Suellentrop. *See* TR., p. 93. Sergeant Poe asked Suellentrop for permission to search his residence. *See* Government. Exh. 10. Suellentrop refused to grant permission. TR., p. 95. Although Suellentrop was afraid that his refusal would be held against him, Sergeant Poe explained that he would not. *See* Government Exh. 9; Government Exh. 9A, pp. 11-12 (ADD, pp. 11-12).

Sergeant Poe contacted a Jefferson County prosecuting attorney about applying for a search warrant. *See* Government Exh. 9; Government Exh. 9A, pp. 13-14 (ADD, pp. 13-14). After their conversation, Sergeant Poe met with the prosecutor. TR., p. 98. Sergeant Poe explained the facts to the prosecutor and told the prosecutor that he wanted to obtain a search warrant to search Suellentrop's residence and LG cell phone. TR., pp. 98-100. Sergeant Poe also told that prosecutor that the phone was currently in his possession, and not at the residence. TR., p. 100. The prosecutor then signed off on the search warrant application and sent it to the State judge for the judge's review. The judge approved the search warrant. *See* TR., p. 101; Government Exh. 11 (search warrant, affidavit, and application). Based upon his conversation with the prosecutor and the judge signing the search warrant, Sergeant Poe believed that the cell phone could be forensically examined. TR., pp.

8

101, 120. If the prosecutor had told Sergeant Poe that he needed a separate search warrant for the phone, he would have sought one. TR., p. 104.

Sergeant Poe went back to Suellentrop's residence and executed the search warrant. TR., p. 102. After executing the search warrant, he filed the search warrant return. Government Exh. 12. The return lists all the items seized from the residence, and the seizure of the cell phone. The listing of the cell phone is set apart from the other items seized from the residence and had a notation that stated, "One LG brand phone provided by reporting party upon initial arrival." TR., p. 103; Government Exh. 12.

Eventually the phone was forensically examined and additional child pornographic images of "M" were found. *See* TR., pp. 116-8.

The first time Sergeant Poe became aware of federal involvement was when the prosecuting attorney handling the case called him and said that Special Agent John "Mark" Burbridge would be contacting him. TR., p. 122.

SA Burbridge, a 30-year veteran of the FBI, became involved in this case in March 2017. TR., pp. 124, 141. SA Burbridge received the investigative materials in April 2017. Based upon his review of the matters, he decided to apply for a federal search warrant to review the contents of Suellentrop's LG cell phone. SA Burbridge was concerned whether the state search warrant (Government Exh. 11) covered Suellentrop's cell phone. TR., p. 125. SA Burbridge also sought advice whether he

9

should apply for a federal search warrant, and was informed that it would be better to obtain one. TR., p. 125. SA Burbridge then prepared an affidavit and applied for a search warrant. SA Burbridge did not include in the search warrant that Jefferson County Sheriff's office personnel had already searched the cell phone, because he did not want to influence the Court's decision with possibly tainted evidence. TR., p. 147-8.

In the affidavit, SA Burbridge included the events giving rise to probable cause in chronological order. *See* Government Exh. 14. *See* Government Exh. 14. In one of the paragraphs, SA Burbridge wrote, "Deputy Roberts seized the cellular telephone and no additional examination was done. The cellular telephone was a LG. . . ." Government Exh 14, p. Sullentrop_00068; TR., p. 145. During the evidentiary hearing, SA Burbridge explained that he was informing the Court what Deputy Roberts had done, he was not trying to assert that an examination was never performed. *See* TR., p. 146.

SA Burbridge applied for and obtained a search warrant to search Suellentrop's LG cell phone. *See* TR., pp. 126-8; Government Exh. 14. SA Burbridge later filed the search warrant return with the Court. TR., p. 128; Government Exh. 15.

10

**Procedural History**

On September 27, 2017, Suellentrop was charged by indictment with seven counts of Production of Child Pornography and one count of Possession of Child Pornography. On January 23, 2018, Suellentrop filed his motion to suppress evidence. (DCD 25). The Government filed its amended response on February 6, 2018. (DCD 30). Suellentrop filed his motion to suppress statements on February 27, 2018. (DCD 33). The evidentiary hearing was conducted on February 28, 2018, before United States Magistrate Judge John M. Bodenhausen at which the evidence and testimony described above was presented. The parties submitted post-hearing briefs. (DCD 45, 49). The "Memorandum, Report, & Recommendations," of the magistrate judge was filed on July 23, 2018. (DCD 50). Suellentrop filed his objections on July 27, 2018, and the Government filed its response on August 2, 2018. (DCD 51, 52).

United States District Judge Catherine D. Perry, adopted the magistrate judge's report and recommendation: "After conducting the evidentiary hearing, Judge Bodenhausen filed a 39 page Report and Recommendation. My de novo review shows that his description of the facts is fully supported by the evidence that was presented. I also credit the testimony of the witness over that of the defendant regarding whether the witness has permission to be in the home and to use the cell phone, and regarding how the witness knew the phone's password. Additionally,

11

Judge Bodenhausen's conclusions of law are entirely correct." (DCD 54, 55). Judge Perry found that the officers' initial warrantless seizure and viewing of the image on Suellentrop's cell phone was justified by the private search exception to the warrant requirement. (DCD 54, p. 4). Judge Perry also found that when the officers obtained a search warrant, the officers believed the search warrant covered the phone. "Because the search warrant was done in good-faith reliance on a valid search warrant" Judge Perry concluded that the evidence should not be suppressed. (DCD 54, pp. 5-6).

Judge Perry also found that the federal search warrant for Suellentrop's cell phone was an independent source. Judge Perry found that the "warrant application did not mention that officials had already found additional child pornography on the telephone, but instead relied only on the initial images that were shown to the arresting officers by witness. … The things that were omitted from the federal affidavit would have bolstered the probable cause for the federal warrant; they would not have detracted from it. This was a correct procedure to assure that the issuing Magistrate Judge evaluated the evidence without considering evidence obtained by a potentially invalid state search of the phone." (DCD 54, p. 5).

On September 6, 2018, Suellentrop entered a conditional plea preserving his right to appeal the denial of his motions to suppress. (DCD 59, pp. 1-2, 16). On

12

December 20, 2018, Suellentrop was sentenced on all eight counts to a total term of imprisonment of 120 years. (DCD 76, p. 3).

13

# SUMMARY OF THE ARGUMENT

The district court properly denied Suellentrop's motion to suppress the evidence found on his cell phone, finding his roommate conducted a private search of cell phone. The facts in the record support this finding and are not clearly erroneous and there is no evidence contradicting that the roommate was not acting in concert with government officials when he conducted the search.

Additionally, the district court properly declined to suppress the evidence on the cell phone based on the initial state search warrant's failure specifically to authorize the search of the cell phone. The applying officer reasonably believed the warrant extended to the cell phone and relied in good faith on that warrant in conducting a forensic examination of the phone. The district court also had alternative grounds for declining to suppress the evidence here. The phone subsequently was properly searched pursuant to a federal search warrant, an independent source.

Finally, there was no abuse of discretion in declining to conduct a *Franks* hearing with regard to the federal search warrant. Suellentrop failed to meet his burden of making a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and the allegedly false statement is necessary to the finding of probable cause. While SA Burbridge did not disclose in the

14

warrant that state officials had searched the cell phone, that omission was not material to probable cause and was an effort to prevent the Court from considering any potentially improper information in making its probable cause determination.

The district court correctly concluded the phone was properly searched and that there was no basis to suppress the fruits of that search. Accordingly, this Court should affirm the district court's ruling.

15

## ARGUMENT

## I. THE DISTRICT COURT PROPERLY RULED THAT THE PRIVATE SEARCH DOCTRINE APPLIED.

### A. Standard of Review

In reviewing the denial of a motion to suppress, this Court reviews a district court's findings of fact for clear error and the denial of motion de novo. *United States v. Smith*, 820 F.3d 356, 359–60 (8th Cir. 2016). The district court's decision on a suppression motion is affirmed "unless it is not supported by substantial evidence on the record; it reflects an erroneous view of the applicable law; or upon review of the entire record, [the Court is] left with the definite and firm conviction that a mistake has been made. Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support a conclusion." *United States v. Esquivel*, 507 F.3d 1154, 1158 (8th Cir. 2007) (citations and internal quotation marks omitted).

A district court's "credibility findings are well-nigh unreviewable, so long as the findings are not internally inconsistent or based on testimony that is incoherent, implausible, or contradicted by objective evidence." *United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001).

16

## B. Analysis

### 1. The District Court Properly Found That Deputy Roberts' Initial Warrantless Seizure and View of the Cell Phone was Justified by the Private Party Search Exception to the Warrant Requirement.

The district court correctly determined that Deputy Roberts could view and seize Suellentrop's cell phone under the private search exception to the search warrant requirement.

### 2. Private Party Searches do not involve the Fourth Amendment.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

Generally, a warrant is required before searching a cell phone. *Riley v. California*, 573 U.S. 373, 401, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014). However, the Fourth Amendment does not apply to a private search, "even an arbitrary one," unless the private party acts as an agent of the government. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 614, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989). The private party exception applies even if the private party unlawfully searches the property. *See United States v. Malbrough*, 922 F.2d 458, 461 (8th Cir. 1990). The private search exception applies "when the search and

17

seizure results from trespass or theft by a private party." *See United States v. Goodale*, 738 F.3d 917, 921 (8th Cir. 2013). "When the government re-examines materials following a private search, the government may intrude on an individual's privacy expectations without violating the Fourth Amendment, provided the government intrusion goes not further than the private search." *United States v. Starr*, 533 F.3d 985, 995 (8th Cir. 2008).

A private party search, however, does not apply when the private party acts as an agent of the Government. *See United States v. Highbull*, 894 F.3d 988, 991 (8th Cir. 2018) (The Fourth Amendment's protection against unreasonable searches and seizures "extends only to actions undertaken by government officials or those acting at their direction.").

### a. Donnelly conducted a private search of Suellentrop's cell phone before the police arrived.

Suellentrop concedes that Donnelly conducted a private search when he initially searched Suellentrop's phone. On January 1, 2017, Donnelly, entered Suellentrop's residence after partying all night. Only Suellentrop and Donnelly were at the residence. TR., pp. 40-1. Donnelly went into Suellentrop's room to get the cell phone. Suellentrop was passed out on the bed and did not know that Donnelly was using the phone. Donnelly started looking and scrolling through the pictures on the phone. *See* Government Exh. 4, TR., p. 15. He saw "small thumbnail images, [he] couldn't make them all out. [He] saw pictures of girls and

18

other things, but the main images were kind of a little blurry at that size until [he] zoomed in on them." TR., p. 17; *see also* Government Exh. 4. Once he zoomed in he said he saw child pornography. TR., p. 17. A victim that he recognized was "M." TR., p. 17. He did not look at all the pictures. TR., p. 18.

Donnelly saw a picture of "M." TR., pp. 18-19. The picture depicted "M" with a penis touching her lips with ejaculate around her mouth. *See* Government Exh. 5; *see also* TR., p. 54; Government Exh. 7. Donnelly also saw Photoshopped pictures that depicted images of penises in a child's mouth and all around the picture. TR., p. 18.

Besides zooming in the on the pictures, Donnelly also saw videos. He played one of the child pornography videos. TR., p. 19, Government Exh. 6. The video depicted "M" and Suellentrop. *See* TR., pp. 19-20.

Donnelly was alone when he looked at the pictures and videos for the first time on January 1, 2017. TR., pp. 20-1. Later, Matt came over. They "were going to take care of the problem in-house." That never occurred. Donnelly showed Matt Suellentrop's cell phone. TR., p. 44. "M's" mother was also informed of what he found. TR., pp. 22, 42, 44. Matt later left Suellentrop's residence.

19

### b. Donnelly was not acting as a government agent.

Suellentrop argues Donnelly was an agent of the police when he showed Deputy Roberts the contents of Suellentrop's phone. However, the district court did not clearly err in finding the contrary.

> In evaluating agency in the Fourth Amendment context, [the] court has focused on three factors:
>
> [1] whether the government had knowledge of and acquiesced in the intrusive conduct;
>
> [2] whether the citizen intended to assist law enforcement or instead acted to further his own purposes; and
>
> [3] whether the citizen acted at the government's request.
>
> A defendant bears the burden of proving by a preponderance of evidence that a private party acted as a government agent.

*Highbull*, 894 F.3d at 992 (citations and internal quotation marks omitted).

The district court adopted the report and recommendation wherein the magistrate judge properly found that "Donnelly acted entirely on his own when he searched Suellentrop's cell phone on January 1, 2017." (DCD 50, p. 17). That finding is not clearly erroneous.

The record reveals that around 1:30 p.m., Deputy Roberts showed up at Suellentrop's residence. TR., p. 21. Donnelly showed Deputy Roberts the picture "M" with a penis touching her lips and ejaculate around her mouth. *See* Government Exh. 5; *see also* TR., pp. 45, 50, 54. Deputy Roberts saw the picture

20

on the phone because Donnelly put the phone into Deputy Roberts "face and into [his] hand." TR., p. 67. Deputy Roberts never asked Donnelly to go through the phone. TR., p. 67.

When Donnelly showed the officer the picture on the phone, the officer turned the phone off and put it in his pocket. TR., p. 55. Deputy Roberts did not conduct any other search of the phone. TR., p. 68. Donnelly told Deputy Roberts that he had seen multiple pictures of Suellentrop sexually abusing "M." *See* TR., pp. 55-6.

Because Donnelly conducted a private search, the Government could re-examine Suellentrop's cell phone without violating the Fourth Amendment provided the Government's search did not go beyond the private search. *See Starr*, 533 F.3d at 995. However, Deputy Roberts did not re-examine the phone. Rather, Deputy Roberts turned the phone off and seized it.

Suellentrop argues that Donnelly unlocked the phone to show the police for the purpose of aiding the police in arresting Suellentrop. However, this was not done at the officer's request. "Even when government officials know of and acquiesce in a warrantless search, [this court has] been unwilling to impute agency where the private actor was not 'motivated solely or even primarily by the intent to aid the officers' and where the government did not request the challenged search." *Highbull*, 894 F.3d at 992.

Appellate Case: 19-1002    Page: 27    Date Filed: 06/05/2019 Entry ID: 4794555

Prior to the police arriving, Donnelly and his friend were going to handle the situation "in-house." Thus, Donnelly was not motivated solely or even primarily by the intent to aid the police. Even if his motivation was to assist, the search had already been conducted. Donnelly only showed the officer one of the images that he had previously found during his private search. The government can "re-examine materials following a private search . . . provided the government intrusion goes no further than the private search." *Starr*, 533 F.3d at 995.

Lastly, Deputy Roberts never requested to see the contents of the phone. Considering all the factors under *Highbull*, and as found by the district court, Donnelly was not an agent of the Government and the search he conducted was a private party search.

Regarding the scope of the private party search, the Government had argued at the motion hearing that Donnelly's review of some of the images extinguished Suellentrop's expectation of privacy in all the images. The magistrate judge concluded, "the private search extended only to those images and the video actually viewed, not the entire photograph folder and not the entire cell phone." (DCD 50, p. 21). The scope is not so narrow. *See United States v. Jacobsen*, 466 U.S. 109, 117-18, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984) ("The Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated.").

22

However, this Court need not reach the scope issue here because Suellentrop's cell phone was forensically examined pursuant to a state search warrant and federal search warrant.

## II. THE DISTRICT COURT PROPERLY FOUND THE GOOD FAITH EXCEPTION TO THE EXCLUSIONARY RULE APPLIED WHEN LAW ENFORCEMENT OFFICERS FORENSICALLY EXAMINED SUELLENTROP'S CELL PHONE.

### A. Standard of Review

On appeal from the denial of a motion to suppress, [this Court] review[s] the district court's factual findings for clear error and its legal conclusions *de novo*." *United States v. Fiorito*, 640 F.3d 338, 344 (8th Cir. 2011). This Court defers to the district court's finding of good faith under *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984), unless clearly erroneous. *United States v. Jackson*, 67 F.3d 1359, 1366 (8th Cir. 1995). The district court's conclusions about the objective reasonableness of the officer's good faith reliance are reviewed *de novo*. *Fiorito*, 640 F.3d at 344.

### B. Analysis

#### 1. The District Court Properly Found That the Good Faith Exception Applied.

Sergeant Poe applied for a State search warrant. Government Exh. 11. He believed that the search warrant covered Suellentrop's phone because the phone was seized from the residence just a short time earlier. In the search warrant affidavit, Sergeant Poe explained that Deputy Roberts seized the phone after viewing its

23

contents. *See* Attachment 2, ¶2. Sergeant Poe discussed with the State prosecutor whether the search warrant would cover the phone, and the prosecutor believed it would. On the search warrant return, the phone was listed as: "One LG Brand Phone provided by Report Party upon initial arrival." *See* Government Exh. 12. After the search warrant was executed, forensic examinations were conducted of the phone.

Generally, evidence obtained in violation of the Fourth Amendment is inadmissible under the exclusionary rule. *United States v. Ortiz-Cervantes*, 868 F.3d 695, 702 (8th Cir. 2017). The "rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally though its deterrent effect. . . ." *United States v. Calandra*, 414 U.S. 338, 348, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). However, the evidence is admissible if the officers executing the search warrant were acting in good faith. *See id.* The test is whether the officers' good faith was objectively reasonable. *Id.* "If the officers acted in good-faith reliance on a warrant, then there is no need to visit the underlying question of probable cause." *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006).

Suellentrop is not contending that the State search warrant violated the Fourth Amendment, only that the State search warrant did not cover Suellentrop's cell phone. Thus, he sought to suppress the forensic examinations of the cell phone. The magistrate judge assumed "that the State search warrant was defective because the

24

[search warrant] did not expressly refer to the cell phone and the phone had already been removed from the residence." (DCD 50, p. 24).

"[S]uppression is not an automatic consequence of a Fourth Amendment violation. Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." *Herring v. United States*, 555 U.S. 135, 137, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009). Suellentrop argues police misconduct stating that Sergeant Poe intended to search Suellentrop's cell phone incident to arrest. However, Sergeant Poe testified that he was seeking a search warrant to search, among other things, Suellentrop's cell phone. TR., p. 99. The magistrate judge found Sergeant Poe's testimony credible. (DCD 50, p.26). The magistrate judge concluded Sergeant Poe's belief the search warrant would cover Suellentrop's cell phone was reasonable. Sergeant Poe intended to obtain a search warrant for the phone, consulted with the State prosecutor regarding the scope of the warrant, sought consent from Suellentrop to search his cell phone and home, and included the cell phone in the return. *Id.* The record supports the magistrate judge's conclusion.

Additionally, during the January 1, 2017 interview of Suellentrop, Deputy Lunsford asked Suellentrop for permission to search his phone and he declined to give it. *See* Government Exh. 9A, p. 5 (ADD, p. 5). Deputy Lunsford then explained that officers would be seeking a search warrant to examine the phone. *Id.* at pp. 5, 7.

Appellate Case: 19-1002     Page: 31     Date Filed: 06/05/2019 Entry ID: 4794555

Suellentrop argues Sergeant Poe could not rely on the search warrant because the warrant did not permit the seizure and examination of a cell phone. He further contends that Sergeant Poe's actions imply that Sergeant Poe was unaware that police needed a search warrant to search the phone incident to arrest. However, Sergeant Poe did not examine the phone incident to arrest. The phone was not searched by police until the search warrant was obtained. The prosecutor told Sergeant Poe the search warrant would cover the phone. "One relevant circumstance to consider when determining whether an officer's actions were objectively reasonable is whether the officer consulted with an attorney prior to seeking the warrant." *United States v. Clay*, 646 F.3d 1124, 1127 (8th Cir. 2011); *United States v. Johnson*, 78 F.3d 1258, 1264 (8th Cir. 1996) ("Seeking the advice of an attorney can be factored in to determine if an officer's conduct is objectively reasonable"). Sergeant Poe did consult with an attorney and acted on the attorney's advice.

Additionally, and as the magistrate judge found, the situation is analogous the circumstances in *United States v. Houck*, 888 F.3d 957 (8th Cir. 2018). In *Houck*, "the district court granted Houck's motion to suppress, fining that the search of his recreational vehicle ("RV") exceeded the scope of an otherwise valid search warrant." *Id.* at 958. The search warrant included a request to search vehicles present at the time of the search. The officer did not specifically identify the RV in the warrant. The district court found the RV was not a residence and not a vehicle.

26

However, this Court reversed, concluding the officers' belief that the search warrant covered the RV was not objectively unreasonable. *Id.* at 961. This was so even though the officers later obtained a second search warrant specifically identifying the RV. *Id.* at 961 n.1.

Here, Sergeant Poe reasonably believed the search warrant covered Suellentrop's cell phone.

### 2. The search warrant was not facially defective.

Suellentrop argues that the good faith exception does not apply because the State search was facially defective. Good faith does not apply where:

(1) the supporting affidavit or testimony includes a false statement made knowingly and intentionally or with reckless disregard for the truth to mislead the issuing judge;

(2) the issuing judge 'wholly abandoned his judicial role' in issuing the warrant;

(3) the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

(4) the warrant is 'so facially deficient' that no police officer could reasonably presume the warrant to be valid.

*Ortiz-Cervantes*, 868 F.3d at 702–03 (citations and quotation marks omitted). With respect to the state warrant, Suellentrop does not contend that the affidavit contains false statements, that the judge abandoned his role, or that the affidavit lacked probable cause. Suellentrop argues only that the search warrant was facially

27

defective because it did not specifically state "cell phone" that it was facially deficient.

The search warrant was not facially deficient and a cell phone could have been seized and searched by the terms of the search warrant. The search warrant allowed the seizure of "DVDs, Cds, video cassettes, mass storage devices (i.e. hard drives, computers, jump drives, etc.) and photographs of victim(s)." Government Exh. 11. Sergeant Poe believed the search warrant authorized the seizing of cell phones located at the residence. Sergeant Poe said that he believed that the cell phone could be seized because of reference in the search warrant to "'mass storage device,' 'digital media,' things of that nature, which phones nowadays are quite capable of." TR., p. 114. Sergeant Poe's reasoning is consistent with Supreme Court's statement that many cell phones "are in fact mini computers that also happen to the capacity to be used as a telephone." *Riley*, 573 U.S. at 393. Thus, Sergeant Poe reasonably believed the search warrant would have allowed the search of a cell phone initially seized at Suellentrop's residence. Thus, the good faith exception could apply.

28

## III. THE DISTRICT COURT PROPERLY FOUND THE FRUITS OF THE FEDERAL SEARCH WARRANT WERE ADMISSIBLE UNDER THE INDEPENDENT SOURCE DOCTRINE.

### A. The district court did not abuse its discretion in declining to hold a *Franks* hearing.

#### 1. Standard of Review

This Court reviews for abuse of discretion a district court's denial of a request for *Franks* hearing on whether a search warrant affidavit as misleading, whether because of a false statement was knowingly or recklessly included in the affidavit, or because material information was knowingly or recklessly omitted. *United States v. Gater*, 868 F.3d 657, 659 (8th Cir. 2017).

#### 2. Analysis

Suellentrop claims that SA Burbridge made two false statements in his affidavit to obtain the federal search warrant. Suellentrop states that paragraph 24 of the search warrant is false when where it states, "Deputy Roberts seized the cellular telephone and no additional examination was done."

In *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), the Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause," a hearing must be held at the defendant's request. *Id.* at 155–56. A defendant is not entitled to

29

a hearing upon allegations of negligence or innocent mistake. *See United States v. Kattaria*, 553 F.3d 1171, 1177 (8th Cir. 2009). It is insufficient for a defendant just to identify falsehoods in an affidavit; a defendant must show that the affiant deliberately lied or recklessly disregarded the truth. *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998).

To be entitled to a hearing, a defendant must "make a substantial preliminary showing that a false statement was included in the affidavit (or that relevant information was omitted from it) intentionally or recklessly, and that the allegedly false statement was necessary to a finding of probable cause or that the alleged omission would have made it impossible to find probable cause." *Id.* at 547–48.

When the case was referred to federal prosecution, it was assigned to SA Burbridge. SA Burbridge determined that he should apply for another search warrant to search defendant's cell phone. SA Burbridge wanted to "make sure that [he] had all the evidence that was inside the phone, you know, extract it." TR., p. 125. SA Burbridge was not sure that the State search warrant covered the phone therefore he sought a search warrant to examine the contents. TR., p. 125. So as not to improperly affect the Court's probable cause determination, SA Burbridge did not include the child pornography images found during the second and third law enforcement search conducted at the Jefferson County Sheriff's Department. In his affidavit, SA Burbridge noted:

Appellate Case: 19-1002    Page: 36    Date Filed: 06/05/2019 Entry ID: 4794555

> Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 2251, 2252, and 2252A.

*See* Government Exh. 14, ¶ 3. SA Burbridge then described the investigation in chorological order. *See id.* at ¶¶ 19 to 33.

SA Burbridge wrote, "Deputy Roberts seized the cellular telephone and no additional examination was done." Government Exh. 14, ¶ 24. This is the same language used in the State search warrant affidavit. *See* Government Exh. 11, ¶ 2. SA Burbridge was trying to make the point that Deputy Roberts did not conduct additional examination. TR., p. 146. This becomes apparent when reading the remaining paragraphs in the SA Burbridge's affidavit, which follow chronologically.

Furthermore, SA Burbridge did not want to improperly influence the magistrate judge with the search that was done pursuant to the state search warrant if the state search warrant did not cover the phone.

Suellentrop argues that if the Court had the additional information, it would not have issued the search warrant. "A search warrant may be invalidated because of omitted facts if (1) the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, and (2) the affidavit, if supplemented by the omitted information, would not have been

31

sufficient to support a finding of probable cause." *United States v. Hager*, 710 F.3d 830, 838 (8th Cir. 2013) (citations and quotations omitted). The district court judge found that "[a]lthough defendant argues that this was a false statement warranting a further hearing, he is not correct. The things that were omitted from the federal affidavit would have bolstered the probable cause for the federal warrant; they would not have detracted from it." (DCD 54, p. 5).

SA Burbridge was not trying to make the affidavit misleading. He informed the magistrate judge of the facts necessary to show probable cause. As the district court found, this was the correct procedure to assure that the issuing magistrate judge evaluated the evidence without considering evidence obtained by a potentially invalid state search of the phone." (DCD 54, p. 5).

Suellentrop was not entitled to a *Franks* hearing because he failed to show that the "alleged false statement or omission was necessary to the probable cause determination." *United States v. Crissler*, 539 F.3d 831, 833 (8th Cir. 2008).

### B. The district court properly concluded that the federal search warrant provided an independent source for the evidence contained in Suellentrop's cell phone.

The district court properly concluded that the federal search warrant acted as an independent source and thus another basis for declining to suppress the evidence derived from Suellentrop's cell phone.

32

"When an otherwise valid search warrant is based upon evidence obtained in a prior warrantless search that violated the Fourth Amendment, it is the exclusionary rule that prohibits the use of this derivative evidence to establish the probable cause need to obtain a valid search warrant." *United States v. Davis*, 760 F.3d 901, 904 (8th Cir. 2014) (citation omitted), cited in *United States v. Reed*, 921 F.3d 751, 755 (8th Cir. 2019). "'Evidence should not be excluded . . . based on a constitutional violation unless the illegality is at least a but-for cause of obtaining the evidence.' [The defendant] 'bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence.'" *Reed*, 921 F.3d at 755 (citations omitted). If the evidence was acquired independently from the taint of the constitutional violation, the exclusionary rule does not apply. *See United States v. Swope*, 542 F.3d 609, 613–14 (8th Cir. 2008). A search warrant can be an independent source. *Segura v. United States*, 468 U.S. 796, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984).

For the independent source doctrine to apply, two questions must be answered in the affirmative: first, "would the police have applied for the warrant had they not acquired the tainted information; and second, do the application affidavits support probable cause after the tainted information has been redacted from them." *Swope*, 542 F.3d at 613–14 (citation omitted); *United States v. Brooks*, 715 F.3d 1069, 1075 (8th Cir. 2013). This Court reviews a district court's conclusion on the decision

33

regarding whether to seek a warrant for clear error and its probable cause determination *de novo*. *Brooks*, 715 F.3d at 1074.

The first question can be rephrased: did the police use the tainted evidence to obtain the subsequent search warrant. The answer is no. First, the police indicated their intent was to obtain a search warrant for Suellentrop's cell phone long before the phone was forensically searched by the state. Sergeant Poe asked the prosecutor if the search warrant would cover the phone. If the prosecutor had said it would not, Sergeant Poe testified he "would have simply applied for another search warrant, specifically for just the phone itself." TR., p. 105. Likewise, SA Burbridge testified that he sought a search warrant to "make sure that [he] had all the evidence that was inside the phone, you know, extract it." TR., p. 125.

When applying for the search warrant, SA Burbridge did not use the tainted information. The reason for excluding it was not to taint the judgment of the magistrate judge when applying for the search warrant. Although the affidavit did not specifically state that there was a prior search warrant, it did state that the affidavit did not contain all the facts, only those necessary to establish probable cause. *See* Government Exh. 11, ¶ 3. SA Burbridge did not include the images of child pornography found during the forensic searches of the cell phone. SA Burbridge, instead, relied on Donnelly's descriptions of what he found and the image that Donnelly showed Deputy Roberts.

Appellate Case: 19-1002    Page: 40    Date Filed: 06/05/2019 Entry ID: 4794555

Regarding the second question, whether the affidavit supported probable cause, Suellentrop is not contesting the district court's findings that probable cause existed.

## IV. THE DISTRICT COURT PROPERLY FOUND THE EVIDENCE ON SUELLENTROP'S CELL PHONE SHOULD NOT BE SUPPRESSED AS FRUIT OF A POISONOUS TREE.

### A. Standard of Review

This Court reviews "the district court's legal conclusions de novo and fact findings for clear error." *United States v. Tuton*, 893 F.3d 562, 565 (8th Cir. 2018).

### B. Analysis

The district court correctly properly determined that evidence obtained was not the product of the fruit of the poisonous tree because the evidence was not obtained in violation of the Fourth Amendment.

"The exclusionary rule extends to 'evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" *Tuton*, 893 F.3d at 568. "Though evidence seized in violation of the Fourth Amendment is subject to exclusion in a criminal prosecution, evidence should not be excluded . . . unless the illegality is at least a but-for cause of obtaining the evidence. The defendant bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence." *United States v. Class*, 883 F.3d 734, 738 (8th Cir. 2018) (citations and internal quotations and brackets omitted).

Suellentrop argues that the federal government would never had initiated an investigation absent being informed of the tainted evidence in this case. He argues,

35

assuming that the evidence was tainted, that the federal investigation itself was tainted. He argues the reason that it was tainted is because Sergeant Poe searched Suellentrop's cell phone incident to arrest in violation of *Riley*.

The record contradicts this claim. Sergeant Poe testified that he sought a search warrant and, after discussing it with the prosecutor, believed that the phone fell within the scope of the search warrant. When he filed the return, he included the phone in the return. He said that if the prosecutor would have told him the search warrant did not cover the phone, he would have obtained a separate search warrant.

Assuming, for argument's sake that the evidence was illegally obtained under state law, it would not prevent the federal government from pursuing the case. "[E]vidence obtained without violating the Constitution or federal law is admissible in a federal trial even though obtained in violation of state law." *United States v. Neville*, 516 F.2d 1302, 1309 (8th Cir. 1975) cited in *United States v. Diaz*, 685 F.2d 252, 254 (8th Cir. 1982). Accordingly, the fruit of the poisonous tree doctrine would not apply.

Accordingly, there is no basis for reversal and this Court should affirm.

36

## <u>CONCLUSION</u>

For all of the foregoing reasons, the United States respectfully requests that this Court affirm the district court's denial of Suellentrop's suppression motion and uphold his conviction in all respects.

Dated: June 3, 2019            Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

*/s/Robert F. Livergood*
ROBERT F. LIVERGOOD #35432MO
Assistant United States Attorney
111 South Tenth Street, 20th Floor
St. Louis, Missouri 63102

37

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies, pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and Eighth Circuit Rule 28A(h), that the foregoing was prepared using Microsoft Word 2016, in 14-point Times New Roman font and that it contains 8,076 words, as determined by the Microsoft Word 2016 word-counting feature and that the electronic versions of the brief has been scanned for viruses and is virus-free.

*/s/Robert F. Livergood*
ROBERT F. LIVERGOOD #35432MO
Assistant United States Attorney

Appellate Case: 19-1002    Page: 44    Date Filed: 06/05/2019 Entry ID: 4794555

## CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Appellate Procedure 25(d) and Eighth Circuit Local Rule 25A(d), the undersigned hereby certifies that on June 3, 2019, the foregoing was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF. Participants in the case who are registered CM/ECF users, including attorney Joseph Mark Hogan, will be served by the CM/ECF system.

*/s/Robert F. Livergood*
ROBERT F. LIVERGOOD #35432MO
Assistant United States Attorney

39